TEMPLETON  v.  BROWN.

(*Knoxville.*   October 13th, 1887.)

1. SUPREME COURT PRACTICE.  *Judicial notice of statute of another State.*

   The Supreme Court will not take judicial notice of the statute of another State, unless it was put in evidence in the inferior court.

   Case cited and approved: Bagwell v. McTighe, 85 Tenn., 616.

2. HUSBAND AND WIFE.  *Separate estate.   Gift to wife.*

   A direct gift of personalty, by a husband to his wife, during coverture, creates in her a separate estate by *necessary implication*, and without express words.

   Cases cited and approved: Powell v. Powell, 9 Hum., 477; Sherron v. Hill, 4 Lea, 500; 3 P. W., 344; 14 Ohio, 37.

   (See Cheatham v. Thornton, 11 Lea, 295.)

3. SAME.   *Note given by husband to wife.*

   A note executed upon a valid consideration by husband to wife during coverture, though void by the strict rules of law, will be enforced in equity against the husband or his estate, as a declaration of trust in favor of the wife—the rights of the husband's creditors being out of the way.

   Case cited and approved: McCampbell v. McCampbell, 2 Lea, 661.

   (See Copeland v. Boaz, 9 Bax., 223, which is clearly distinguishable from this case.)

FROM KNOX.

Appeal from Chancery Court of Knox County. H. R. GIBSON, Ch.

WASHBURN & TEMPLETON for Complainant.

TAYLOR & HOOD for Creditors.

H. H. INGERSOLL for Devisee.

FOLKES, J. Bill by the administrator of Thomas Brown, deceased, with the will annexed, for the settlement of the estate in the Court of Chancery under the Code.

The widow, devisee, and creditors are made defendants.

The bill charges that "the defendant, Frances Brown, claims to be a creditor of the estate to the amount of some $10,000;" "that the debt claimed by Frances Brown, as complainant is informed and charges, came as follows: Frances Brown was the wife of said testator, and to her he had given, not only very valuable real estate, but a large amount of money." Of the money so given her by him "she afterwards let him have a part, say $9,000 or $10,000, and the notes now held and claimed by her were given for a part of the same—given to the wife by the husband; and complainant denies that they constitute a legal liability against the estate of the husband."

Prayer of bill •is, that "creditors specially mentioned herein may answer the allegations of this bill as to their claims, on oath," for publication as to all creditors, etc.

Frances Brown answers the bill fully, and in her answer, among other things, denies that her husband had given her any real estate, but admits that he gave her some $49,000 or $50,000 in notes, being about half of the proceeds of the sale of

property in Ohio; that the notes were payable to Thomas Brown, and by him indorsed and delivered to her; that he then left their home in Ohio and came to Tennessee, where he embarked in business; that she collected some of the notes, and loaned some of the proceeds thereof to Harvey & Brown, the firm of which her husband was a member after he came to Tennessee; that she also loaned money to her husband individually, he coming to her home in Ohio and borrowing it from her for the purposes of his business in Tennessee; that, subsequently, there was a dissolution of the firm of Harvey & Brown, and her husband assumed all the debts of the firm; that she had a settlement with her husband in Tennessee on December 3d, 1883, and after charging him with moneys loaned to Harvey & Brown, and to her husband alone, and crediting him with interest that he had paid to her, all maters between them were settled, and he executed and delivered to her his three promissory notes, dated Knoxville, Tenn., December 3d, 1883, each for $3,333.33, payable to her order, at the Mechanics' National Bank, in one, two, and three years, respectively, with interest from date; which notes are exhibited with the answer. "She insists that said notes are, both in law and equity, binding upon the estate of Thomas Brown, and that she is entitled to a decree therefor."

It is also set up in the answer that, under the statute law of Ohio, where she received the first gift of notes from her husband, the proceeds thereof

became her separate property, and that, when subsequently loaned to her husband, the notes now in suit became her separate property by reason of the character impressed upon the transaction by the laws of Ohio. This contention might as well be disposed of at once. It is sufficient to say that there was no proof offered of the Ohio law; that, after some uncertain sound in our decisions, it is now well settled in this State that this Court will not take notice of the statute laws of a sister State, unless proof of same be offered in the Court below. *Bagwell* v. *McTighe,* 85 Tenn., 616.

To return to a further statement of the case as presented in this record. R. H. Brown, the son of Thomas, proves that he knew of his father borrowing money from his mother for himself, and in the name of Harvey & Brown, and of his father paying interest thereon. He was present when the three notes in question were executed, and knows that they were given in settlement of the amount admitted by his father to be due his mother.

The legatee, Marian A. Hopkins, gives a deposition, in which she says that Thomas Brown told her that his wife claimed that he owed her $10,000, although he denied it as a debt.

This was all the proof. There was an agreement of counsel filed, to the effect that the answer of Frances Brown might be treated and used as a deposition, but coupled with a reservation of right to except to any portion thereof for incompetency; and when the cause was at hearing, exceptions

were taken by counsel, and allowed by the Chancellor, which practically deprives her answer of all value as a deposition. So the cause must stand on the pleadings and proof as above recited.

The Chancellor adjudged that the notes were not evidence of a valid subsisting indebtedness on the part of Thomas Brown, which she could have enforced in his lifetime, and cannot now be enforced against his estate; pronounced said notes void, and directed them to be surrendered and cancelled.

Frances Brown, appeals.

It is insisted on behalf of the administrator that the note of the husband to the wife is void; this is true under the strict rules of the common law, but fails to furnish a sufficient answer to the demands of the wife in equity.

Under well settled principles we have no hesitation in holding, under the pleadings and proof in this cause, that the execution of the notes in question constituted a declaration of trust in favor of the wife, which equity will enforce, there being no controversy here as to the rights of creditors, counsel for Mrs. Brown expressly yielding priority to other creditors, if their be any.

It is needless to enter at length upon a discussion of the many methods of creating a separate estate in personalty in the wife. It is a creature of equity for the relief of the wife from many of the hardships and restrictions which the inflexible rules of the common law impose upon her. One

of these methods is by gift from the husband during coverture, if made absolutely, and not intended as mere paraphernalia, subordinate of course to rights of husband's creditors, if made voluntarily, or with intent to hinder, delay, or defraud them. Section 1100, Pomeroy's Eq. Ju.

The intention to create a separate estate must clearly appear, either by express terms or by necessary implication, otherwise the marital rights of the husband will attach.

When the gift is from a stranger, the intention must usually appear from the express language of the donor, in terms creating such an estate; otherwise the rights of the husband will not be excluded. But where the gift is from the husband, the intention to exclude himself is inferred from the circumstances of the case, and 'the situation of the parties without the use of the express words that would be required where a third person is the donor.

The cases to which our attention has been called by counsel for the administrator are all where the estate came from a third party.

Not only is our conclusion sustained by approved text writers (see 1 Bish. Mar. W., 119, *et seq.*, 123, 161, 728, 757; 2 Story Eq. Jur., § 1373; Perry on Trusts, § 639), but has been substantially adjudged in our reported cases.

In *Powell* v. *Powell*, 9 Hum., 477, a conveyance of slaves by the husband to the wife was upheld. This is a leading case in Tennessee, and presents

a full discussion of the question by Judge Turley, to which nothing can well be added.

Again, in *McCampbell* v. *McCampbell*, 2 Lea, 661, we have a case, not only the same in principle, but in instance. It was a bill by a widow against the executors of the husband to recover the amount of promissory note executed by the husband directly to her during the coverture. The proof showed that the husband permitted the wife to hold, and renew in her own name, the notes held by her at the time of the marriage, or afterwards received.

There was no declaration of a trust, no renunciation in terms of his marital rights; indeed, the identical note was found in a pocket-book, in a chest in which the testator kept his papers, and to which both the husband and the wife had access. It is true that there was proof that the note was given for money received as part of her distributive share of her father's estate, but Judge Cooper, in the opinion, says, "this fact is, however, not material to her rights." The case is rested upon the fact that the husband *borrowed* the money from the wife, and gave his note to her for the amount; the equity of the wife is fixed by the very nature of the transaction.

This case cites *Slanning* v. *Styles*, 3 P. W., 334, where it is held that the consideration of money borrowed from the wife would, in equity, make the husband a trustee for the wife. To the same effect is *Huber* v. *Huber*, 10 Ohio, 37, cited approvingly in this case, as also in *Powell* v. *Powell, ante,* where

it is said "a note from a husband to his wife is a very unusual thing, and this very circumstance is, in consequence of its uncommonness, a convincing argument that he intended to withdraw the money, of which it was the evidence, from his control, and to give it absolutely to his wife." There is no meaning to the transaction, unless this interpretation can be put upon it.

The same principle is announced in *Sherron* v. *Hill*, 4 Lea, 500, where a chattel had been bought *from the husband* by a third person, and given to the wife, was adjudged to confer upon the wife a separate estate, from the very nature of the transaction, without any *words* from the donor showing an intention to create a separate estate. It being treated by the Court as though the husband had himself made the gift to the wife, which, in the language of the opinion in that case, "would confer a separate estate without express words."

When it is recalled that the husband, in the case at the bar, had years before endorsed and delivered notes to his wife; that she had loaned the proceeds thereof to a firm of which he was a member; that she had loaned him money, and that she follows him to Tennessee demanding a settlement, and in response to such demand he stipulates for an extension of time, and finally executed the notes in question, and delivered the same to her, where they remained until his death, can it be doubted that it was his intention to create in her a separate estate, and to denude himself of any right therein?

Templeton *v.* Brown.

Certainly not, in the light of the authorities to which we have adverted.

The decree must be reversed, and judgment here in the wife's favor against the administrator.

The cause will be remanded for settlement in the Chancery Court, in accordance with this opinion. The complainant will pay the costs of this Court, and of the Court below, to be allowed him in his account as administrator.