Carpenter *v.* Franklin.

## CARPENTER *v.* FRANKLIN.

### (*Knoxville.* September 20, 1890.)

1. HUSBAND AND WIFE. *Husband's gift of personalty to wife creates in her a separate estate.*

   Direct gift of personalty from husband to wife during coverture creates in her a separate estate by implication, without words of limitation to her sole and separate use.

   Cases cited and approved: Powell *v.* Powell, 9 Hum., 477; Templeton. *v.* Brown, 86 Tenn., 50; McCampbell *v.* McCampbell, 2 Lea, 663; 3 P. Wms., 334.

2. SAME. *Same. Wife's earnings and savings become her separate estate, when.*

   Earnings and savings of the wife, the fruits of her own toil, frugality and self-denial, become her separate estate, without any express gift or contract of the husband, where she is permitted to receive and retain them, and to loan and invest them in her own name for her own benefit.

3. SAME. *Husband's creditors have no right to wife's earnings. Gift to wife not fraudulent.*

   The husband's creditors have no right to compel the application of the wife's earnings—the fruits of her own toil—to the payment of his debts, and therefore the husband's assent that those earnings shall become her separate estate, and be invested in her name and for her benefit, is valid even as to his existing creditors.

   Case cited and approved: Leslie *v.* Joiner, 2 Head, 513.

4. SAME. *Wife's savings protected from husband's creditors, when.*

   Not even existing creditors of the husband can compel the wife to surrender her savings, insignificant in amount, accumulated as the result

Carpenter *v.* Franklin.

of self-denying frugality from monthly allowances, reasonable in amount, paid her out of the husband's monthly wages to meet her own and the family expenses.

### FROM KNOX.

Appeal from Chancery Court of Knox County. H. R. GIBSON, Ch.

TAYLOR & HOOD for Carpenter.

INGERSOLL & PEYTON for Franklin.

LURTON, J.   This is a bill by creditors of Matt Franklin to subject to the satisfaction of their debts a house and lot, the title to which is in his wife.   This property was bought by Mrs. Franklin, in 1886, for the price of $1,900, and the title was taken in her own name.   She paid at the time the sum of $800, and gave the notes of herself and husband for the remainder, payable in one and two years.   This bill was filed in August, 1889, at which time these notes had been paid.

Complainants became creditors some time after the purchase of this property, but before the payment of the deferred notes.   The bill charges that the money procured by Matt Franklin upon certain notes indorsed by them for his accommodation was used in paying off the last of the pur-

chase-money. This charge is denied, and there is no proof to sustain it.

The bill further charges that the purchase-money paid for the property was paid by their debtor, Matt Franklin, and the title taken in his wife's name for the fraudulent purpose of defeating his creditors. There is no proof of fraud in fact upon the part of either husband or wife, and complainants' bill must be sustained, if at all, upon the ground that the conveyance to the wife was a voluntary settlement by the husband upon the wife, and void as to existing creditors.

Complainants took the proof of both Mr. and Mrs. Franklin, and rely upon it to support their case. From this proof it appears that the entire purchase-money has been paid by the wife from a fund slowly accumulated during a period of eighteen years, as a result of her great economy, and earnings made in keeping boarders and as a seamstress, together with her savings from time to time of small sums given her by her husband, or saved by her out of her personal or household expense fund.

Mr. Franklin was a railroad engineer, and in receipt, for about sixteen years, of wages averaging $120 per month. The management of his household, from his necessary absence, seems to have fallen almost wholly upon his wife. He was accustomed to turn over to her each month one-half of his wages to be used by her for her personal and household expenses. Whatever she was

by economy enabled to save from this allowance of her husband for personal and household expenses, she retained and claimed as her own.

As far back as 1880 she began, with her husband's permission, to take boarders, and the profits arising from this source she has been permitted to retain as her own earnings. She was during all this time accustomed to do sewing, and the money thus made she added to her fund.

From the beginning, she was actuated by a very earnest desire to acquire a home of her own, and to this end she practiced the utmost frugality.

The fund thus accumulating was kept out at interest by her, and in her own name. To add to her savings and earnings, she did her own house-work, her cooking and her sewing. So frugal and industrious had she been, that at the time she bought the place now sought to be subjected to her husband's debts, her fund amounted to $1,200. Mr. Franklin had no debts prior to 1886, and the rights of no creditor were affected by his assent to his wife's assertion of title to the fund thus accumulated. If this fund of $1,200 be treated as the aggregate of the gifts of the husband to the wife within the sixteen years during which it was accumulated, then, as against the husband and his subsequent creditors, there is no difficulty in holding this $1,200 to be the separate estate of the wife. A direct gift by the husband to the wife during coverture of money or other personalty, creates, by necessary implication,

10—5 P

a separate estate in the wife. *Powell* v. *Powell,* 9 Hum., 477; *Templeton* v. *Brown*, 86 Tenn., 50.

A very early and much cited case is that of *Slanning* v. *Style*, 3 P. Wms., 334. In that case the widow claimed to be paid out of her husband's estate £100. It appeared that whenever any person came to buy any fowls, pigs, etc., that the husband would say he had nothing to do with those things, which were his wife's, and that he had confessed that he had at one time borrowed from the fund in his wife's hands, arising from such sales of fowls and small produce, the sum of £100. To the claim it was insisted that the borrowing from the wife was only the husband borrowing his own money, and that there was no express agreement in writing whereby to raise a separate estate in the wife. But Lord Chancellor Talbot decreed that the widow was a creditor, observing "that the Courts of Equity have taken notice of and allowed *femes-covert* to have separate estates by their husbands' agreements; and this £100 being the wife's savings, and there being evidence that the husband agreed thereto, it seemed but a reasonable encouragement to the wife's frugality, and such agreement would be of little avail were it to determine by the husband's death."

An agreement that the gift of the husband to the wife shall be to her separate use, arises from the very necessity of the case, else the gift would be ineffectual. A gift to the wife of her own earnings, either from her labor, as for sewing, or

from the profits of her boarders, or of her savings from money furnished her for her own personal expenses, or her household expenses, may be made out by circumstances, and, when so made out, is as effectual as if proven by express contract. Especially does the implication of a gift to her sole and separate use arise where, as in this case, the wife, with the assent of the husband, loaned out such earnings and savings in her own name, or invested it in realty, taking title to herself. *McCampbell* v. *McCampbell*, 2 Lea, 663.

Shortly before the purchase of this property by Mrs. Franklin, her husband contracted a small indebtedness, a part of which seems to be yet unpaid. About this time he became a sufferer from rheumatism. Pain led him to the use of morphine, and within little more than a year after the purchase of this property he had become so much a victim of morphine and disease as to nearly destroy his capacity as a wage-earner. For something over a year after this investment he continued to contribute one-half of his wages toward the maintenance of his wife and her household expenses, but after that time his contributions as well as capacity to earn wages seem to have terminated. In the meantime he had a number of debts for borrowed money, which he spent in the gratification of his morphine habit, or in efforts to be cured, and in unfortunate speculations. Some of these debts are due to complainants. They were all made upon his individual credit, and not at all upon the faith

of this property, nor upon any connivance or consent of his wife. She continued to take boarders and to do sewing. The saving of house - rent doubtless accelerated her accumulations, and before this bill was filed she had, with aid of one hundred dollars borrowed by her from her brother, fully paid off the remainder of purchase-money.

It is now insisted that whatever may be her rights as to the $1,200 accumulated before she bought this property, and while her husband was free from debt, that her savings and earnings after her husband became indebted are subject to the debts of her husband, and may be followed into the property in which she has invested them. Under the savage principles of the common law, the earnings of the wife belong absolutely to the husband. So, under the same stern code, the personal property of the wife at time of her marriage, or which comes to her by gift or descent during coverture, becomes the property of the husband. Equitable principles have, however, much tempered the harshness of these ancient rules. Thus, the wife's choses in action survive to her unless reduced to the husband's possession during coverture. The husband's assent to her retention of her choses is sufficient to establish her right to them as a separate estate. Even creditors will not in equity be suffered to coerce the husband to an assertion of his right, when the wife asks a settlement, or such settlement seems just to the Chancellor, even though unsought. Even at the

common law the creditor has no right or power to coerce the labor of his debtor. His paramount duty is to his family. Neither have creditors the right to compel their debtor to appropriate the earnings of his minor child. He may emancipate such child, and suffer it to reap the fruit of its own toil. So in *Leslie* v. *Joiner* it was held that a father may contract with his minor children that the produce of his minor children shall go to the support of the father's family, and the product of the labor of such children was held not subject to the creditors of the father. 2 Head, 513.

The right of the husband to the earnings of his wife, and the right of the creditor of such husband, stand upon no higher ground than does the right of the father to the earnings of his minor children. In either case the creditor has no right save through the husband or father; and if the father emancipate his minor child, or the husband assent to the wife's ownership of the fruit of her own toil, the creditor has no remedy.

"The wife's earnings," says Mr. Pomeroy, "may also, by the assent of her husband, be her separate property." Pomeroy's Equity, Sec. 1100.

The creditor, having no right to coerce the labor of the wife, is not affected by the assent of her husband that her earnings shall be her separate estate. No fund is thus diverted which was subject to his demand.

Mrs. Franklin, with the assent of her husband, continued to take boarders and to do sewing, and

with his assent her earnings from these sources were retained by her as her separate estate. The fact that he was indebted does not, in law or equity, affect the result. The earnings were the result of her own volition, the product of her own toil, and the fruit of her own self-denying frugality. The contributions of her husband after he became insolvent were necessarily of infinitesimal importance, and, from this proof, are unascertainable. *De minimis lex non curat.*

She says that of the purchase-price of this property, $979 was her earnings from her boarders. In addition to this, she made an uncertain sum by sewing. If we add to these two sums the gifts of the husband to his wife before insolvency and while he was a steady workman, and the sum of $100 borrowed by her, we can easily see that in the payment of the purchase-money of this property the gifts of the husband to the wife after she bought and after he became indebted, were of trifling importance.

The decree of the Chancellor will be reversed, and the bill dismissed with costs.