Snodgrass *v.* Hyder.

SNODGRASS *v.* HYDER.

(*Knoxville.*    November 12,   1895.)

1. MARRIED WOMAN.   *Separate estate.*

The separate estate of a married woman can only be bound by
her express agreement to that effect.   (*Post, p. 573.*)

Cases cited and approved: Federlicht *v.* Glass, 13 Lea, 481; Jordan
*v.* Keeble, 85 Tenn., 412; Theus *v.* Dugger, 93 Tenn., 41.

2. SAME.   *Vendor's lien enforced against lands purchased by.*

A lien for unpaid balance of purchase money, reserved in a deed
to a married woman, may be enforced by sale of the premises,
whether the portion already paid was her separate or her gen-
eral estate.   (*Post, p. 573.*)

Cases cited and approved: Jackson *v.* Rutledge, 3 Lea, 626; Cheat-
ham *v.* Thornton, 11 Lea, 295; Browning *v.* Browning, 11 Lea,
110; Federlicht *v.* Glass, 13 Lea, 481.

3. SAME.   *Not liable to personal judgment.*

Personal judgment cannot be taken against a married woman
upon her note given for the purchase price of land, where she
pleads coverture, but the land may be sold therefor under the
lien reserved.   (*Post, p. 577.*)

Cases cited and approved: Jackson *v.* Rutledge, 3 Lea, 626; Will-
ingham *v.* Leake, 7 Bax., 453; Browning *v.* Browning, 11 Lea,
106; Jordan *v.* Keeble, 85 Tenn., 412; Federlicht *v.* Glass, 13
Lea, 481.

4. SAME.   *Creation of separate estate.*

A separate estate may be created by an impl ed, as well as by an
express, agreement.   For example, a direct gift of personalty
by husband to wife. during coverture, vests in her a separate
estate by implication.   So, likewise, a gift by husband to wife
of her savings and earnings may become her separate estate by
implication.   (*Post, pp. 574, 575.*)

Cases cited and approved: Carpenter *v.* Franklin, 89 Tenn.. 144;
Powell *v.* Powell, 9 Hum., 477; Templeton *v.* Brown, 86 Tenn.,
50; McCampbell *v.* McCampbell, 2 Lea, 663.

Snodgrass *v.* Hyder.

5. SAME. *Same.*   *Example.*

A married woman has acquired a separate estate by implication, which her husband cannot gainsay, in a fund which he has permitted her to accumulate, and to use in buying and selling, without requiring her to account for it, and which he had lost sight of until eighteen months after she had invested it in a tract of land.   (*Post, pp. 576, 577.*)

6. SAME.   *Right to convert or invest her separate estate.*

A married woman has the right, without her husband's knowledge or consent, to convert her personalty, held as separate estate, into realty, to be held as her general estate.   (*Post, p. 577.*)

Case cited and approved: Chadwell *v.* Wheless, 6 Lea, 318.

7. SAME.   *Liability for attorney's fees.*

An attorney's fee, provided for in a note of a married woman given for the purchase price of land, cannot be enforced against the lot under the reservation of a vendor's lien in the deed, where she did not bind her separate estate.   (*Post, pp. 577, 578.*)

---

FROM WASHINGTON.

---

Appeal from Chancery Court of Washington County.   JNO. P. SMITH, Ch.

ISAAC HARR for Snodgrass.

TIPTON & SIMERLY for Hyder.

WILKES, J.   Complainant sold to defendant S. E. Hyder, a married woman, wife of defendant S. W. Hyder, on July 17, 1892, a lot in the town of Johnson City, for which she agreed to pay $400.

Of this amount she paid $150 in cash, and for the remainder she gave two notes, each for $125. The first of these notes, after a reduction of $20 allowed, was paid, and the remaining note for $125 and interest is unpaid. A deed was executed to the wife, conveying the lot to her as her general estate and reserving a lien for the unpaid purchase money. This deed was accepted by the wife, and kept by her until the bringing of this suit. The bill is filed to collect the balance due from the wife, and, for that purpose, to sell the lot in controversy.

The husband and wife answered the bill and admitted the purchase, the price, the payments, and the balance due, but relied upon the coverture of the wife in bar of any recovery. They filed their answer as a cross bill and set up in it that the contract of purchase was made by the wife, but that the husband's money was used in making the payments and the deed taken to the wife without the knowledge or consent of the husband, and that the vendor actively instigated the wife to keep the entire matter a secret from the husband. The prayer of the cross bill was that complainant be required to refund to the husband the amount paid him by the wife, and that a lien be declared on the lot and that it be sold to satisfy and repay said amount.

This cross bill was answered by complainant, admitting that he knew the purchaser to be a married woman, but denying the other allegations. Proof was taken, and, on the hearing, the Chancellor re-

scinded the contract, and gave the husband, S. W. Hyder, judgment for the amounts paid, and declared same a lien on the land, and ordered it sold if necessary, and complainant appealed and has assigned errors.

The cause has been heard by the Court of Chancery Appeals, and that Court reversed the decree of the Chancellor and gave complainant the relief asked for by him in his original bill, and denied defendants any relief under their cross bill, and they have appealed to this Court.

In the Court of Chancery Appeals the cause was made to turn upon the question whether the wife, S. E. Hyder, had a separate estate when she bought the lot in controversy, and that Court was of opinion that she did have such separate estate. It reports the facts bearing on this question to be, that the wife accumulated the money which she paid on the lot from things which she sold about the house and farm, such as pigs, eggs, chickens, fruit, etc. The husband states that he knew his wife had money which she received from that source, but did not know what she did with it; that she did not account to him for such money, but used it herself; that she bought cattle, hogs, and horses sometimes, with his consent, and paid her money, and had done so for several years; and that she had some money of her own all the time. He further stated, in answer to a question, that the property sold by her belonged to him and her jointly as husband and

wife.   The wife testified that she made the money
by working for it—that is, by raising chickens and
selling them, as well as eggs, butter, lard, and
some bacon.   She also testified that she bought the
lot and paid the money and gave her notes for
the credit installments, all at the instigation of com-
plainant, and, at his suggestion and request, kept the
entire matter secret from her husband.

The Court of Chancery Appeals thought these
facts brought the case clearly within the findings
and rule laid down in *Carpenter* v. *Franklin*, 5
Pickle, 143, and that the husband had, by his course
of dealing with his wife, allowed her to accumulate
this fund as a separate estate, and, hence, he would
not be entitled to recover back the purchase money
which had been paid, and that, the contract having
been executed so far as the payments had been
made, and by delivery of the deed to the wife, the
complainant had a right to recover the balance due,
and have the lot sold to pay it, as well as the
interest and cost and an attorney's fee of ten per
cent. provided for in the face of the note.

The opinion of the Court of Chancery Appeals di-
rects "that the decree of the Chancellor be reversed,
and a decree entered for the amount due on said pur-
chase money note, with interest and attorneys' fees and
costs, to be enforced by a sale of the lot, but there
will be no personal decree against the husband and
wife, except a decree against the husband and his

securities on the bond given to prosecute the cross bill, and for the costs thereunder.''

The decree drawn on this opinion, among other things, directs that complainant recover the amount of his note sued on, principal, interest, and ten per cent. attorneys' fees, to wit: the sum of $172.55, and the costs of the cause incident to this decree in this Court and the Court below, and that, unless defendant, S. E. Hyder, pay this decree in a certain time, the lot shall be sold, etc.

So far as complainant's right to collect the balance of purchase money, and to sell the lot therefor, is involved under the original bill, it is immaterial whether the money paid complainant was the separate estate of the wife or not, or, indeed, whether she had any separate estate, as she did not, in the contract with complainant, bind any separate estate, or undertake to do so, and any separate estate outside of the lot itself could only be bound by an express agreement to that effect (*Federlicht* v. *Glass*, 13 Lea, 481; *Jordan* v. *Keeble*, 1 Pick., 412; *Theus* v. *Dugger*, 9 Pick., 41); and the lot could be sold for the unpaid purchase money, whether that already paid was separate or general estate, if it was money that belonged to the wife. *Jackson* v. *Rutledge*, 3 Lea, 626; *Cheatham* v. *Thornton*, 11 Lea, 295; *Browning* v. *Browning*, *Ib.*, 110; *Federlicht* v. *Glass*, 13 Lea, 481.

If, however, this money paid by complainant actually belonged to the husband, and not to the wife,

and was used by her without the husband's authority or consent, he would have a right to recover it back under the prayer in his cross bill, and it is only in this view of the case that the question becomes material whether the money paid was the property of the husband or the wife.

From the intimate and confidential relations existing between husband and wife, and because of their daily intercourse and transactions with each other, it is difficult, in many cases, to determine whether property under their control is the separate estate of the wife or her general estate, which, if personalty, would belong to the husband, or the husband's property left in her custody for convenience or for prudential reasons.

In the case of *Carpenter* v. *Franklin*, 5 Pic e, 144, the husband was a railroad engineer, and necessarily absent from home much of his time. He turned over to his wife, each month, one-half of his wages, to be used by her for her household and personal expenses, with an agreement that whatever she was enabled, by economy, to save from this allowance, after paying such expenses, she should be permitted to retain and claim as her own. She also kept boarders and did sewing, and was allowed to retain the money thus earned as her own. She loaned out what she thus accumulated in her own name. There was in that case an express agreement between the husband and wife, clearly shown, that the money saved by the wife out of that handed to

her by her husband and that earned by her own
labor should be her own, and she so treated it,
loaning it in her own name, and, this agreement
continued, as to her earnings, after the husband had
become disabled to labor. 5 Pickle, 149, 150. But,
to constitute a separate estate in the wife in such
cases, there must be either an express agreement or
such facts as that the law will clearly imply such
agreement therefrom. A direct gift by the husband
to the wife, during coverture, of money or other
personalty creates, by necessary implication, a sep-
arate estate in the wife, else the gift would not be
effectual, and, likewise, a gift of earnings or savings
may be shown by circumstances, and, when so shown,
is as effectual as if proven by express contract.
*Powell* v. *Powell*, 9 Hum., 477; *Templeton* v. *Brown*,
86 Tenn., 50; *McCampbell* v. *McCampbell*, 2 Lea,
663; *Carpenter* v. *Franklin*, 5 Lea, 146, 147; Pom-
eroy's Equity, Sec. 1100.

In the case at bar there is no evidence of any
direct agreement between the husband and wife that
the money and property in her hands, derived from
the sale of domestic products, should be her own
as separate and distinct from her husband's owner-
ship, and if such character is impressed upon it, it
can only be done by implication from the facts as
found by the Court of Chancery Appeals. The di-
rect question as to whether it was intended to be,
and was, treated as a separate estate or the wife's own
property, was not put to either husband or wife by

either party. The husband, however, states that his wife had some money all the time, and, by his consent, had · bought some cattle, hogs, and sometimes horses with her own money. It is evident, therefore, that she had some money which the husband recognized as her own, and if it was not derived from the same source that the money invested in this lot was derived, there is no proof where it originated. It is also evident that he allowed her to use such money in purchasing and selling, and it appears from his own statement that he had lost sight of this money, inasmuch as he did not know of the investment in the lot for some eighteen months after the trade was made, and then learned it through complainant.

The cross bill proceeds upon the idea that the money paid belonged to the husband, and was paid out by the wife on this lot without his consent, and that the fact of its payment was kept a secret from him by the collusive arrangement between his wife and complainant, and that he disaffirmed the agreement so soon as it came to his knowledge. To sustain this contention, it must appear that the money paid was that of the husband, and not of the wife.

The Court of Chancery Appeals is of opinion that, from the facts found by them, a separate estate in the wife was created by implication, inasmuch as the husband had permitted his wife to accumulate this fund and to use it in buying and sell-

ing, not requiring her to account for it, and losing
sight of it for eighteen months after it had been
paid out by the wife, and we are satisfied with this
result. The ˉfact that the arrangement was kept
secret from the husband, does not amount to a fraud,
as there is no evidence that the property was bar-
gained to the wife at an exorbitant price or that
any undue advantage was taken of her in the trade.
She had the right, if she chose, to convert her per-
sonalty, held to her separate use, into realty, to be
held as her general estate, and there is no alle-
gation or proof in the case that this was intended
to, or did, operate as a fraud upon her. *Chadwell*
v. *Wheless*, 6 Lea, 318. It follows that the money
paid to complainant, not having been that of the
husband, he cannot recover it back, and is not en-
titled to the relief asked under his cross bill. It
also follows that complainant has a right to sell the
lot for the unpaid purchase money and interest, but
he has no right to any personal judgment against
the married woman, nor to subject any other prop-
erty she may. own. *Jackson* v. *Rutledge*, 3 Lea,
626; *Willingham* v. *Leake*, 7 Bax., 453; *Browniny* v.
*Browning*, 11 Lea, 106; *Jordan* v. *Keeble*, 1 Pickle,
412; *Federlicht* v. *Glass*, 13 Lea, 481. But the
attorney's fee of ten per cent. cannot be enforced
either against the married woman personally or the
lot, because it is not binding on her personally,
over her plea of coverture, and it is not a part of
the purchase money of the lot, but rather in the

37—11 p

nature of damages for the nonperformance of a voidable personal contract. The note being avoided, the provision for an attorney's fee for its collection is avoided with it. The decree of the Court of Chancery Appeals is so modified as to exclude any personal judgment and so as to eliminate the attorney's fee from the amount of the debt, and, as thus modified, the decree of that Court will be affirmed, except that the costs of this Court and the Court below will be equally divided between complainant, Snodgrass, and W. F. Hyder, the complainant in the cross bill, and the cause will be remanded for a sale of the lot, if the balance of purchase money is not paid.