ROBERTSON v. WADE et al.—68 S. W. (2d) 487.

Middle Section.   October 7, 1933.

Petition for Certiorari denied by Supreme Court, January 27, 1934.

R. E. Lee, of Pulaski, for appellant receiver.

J. L. Jones and D. R. Wade, Jr., both of Pulaski, for appellee Mrs. Wade.

CROWNOVER, J.   This was a suit to set aside as fraudulent a mortgage executed by the husband, T. B. Wade, Jr., to his wife, Mrs. Annie White Wade, to secure an indebtedness of $63,977.07.

The original bill in this cause was filed by the receiver of the Citizens' Bank of Pulaski against T. B. Wade, Jr., and wife, Mrs. Annie White Wade, and others, for the recovery of a decree against T. B. Wade, Jr., on approximately $13,000 of notes due said bank, and to have set aside as fraudulent a trust deed executed by Wade conveying to his wife all of his property, real and personal, to secure to her an indebtedness of $63,977.07, and to have an equitable lien declared in favor of said bank on certain live stock included in said trust deed.  The bill further prayed that same be sustained as a general creditors' bill, for attachment and injunction and the appointment of a receiver.

Mrs. Annie White Wade answered and denied the allegations of the bill, and alleged that she had inherited from her parents an estate of considerable size which she had always held separately and operated as her separate estate; that her husband had never reduced

her personal property to his possession or tried to exercise any control over it; that out of her estate she had loaned money to her husband in an amount in excess of the amount of the note secured by the deed of trust, which amounts he had promised to repay; that said deed of trust was executed to her in good faith for the purpose of securing said indebtedness. She further stated that at the time of the execution of said trust deed she had no knowledge of the fact that her husband had attempted to pledge to the bank certain live stock conveyed to her by said deed of trust.

T. B. Wade, Jr., answered and denied all fraud, and alleged that each and every item secured in the trust deed represented moneys that he had borrowed from his wife with intention to repay. He admitted his indebtedness to the bank.

It was agreed in writing by the parties that the cause should be heard by the chancellor upon oral testimony adduced in open court in accordance with chapter 119 of the Public Acts of 1917, Code, sec. 10564.

The Northwestern Mutual Life Insurance Company filed its answer and cross-bill, praying for a decree against T. B. Wade, Jr., for the amount of its mortgage, $26,000, interest, attorneys' fees, and expenses, against said land covered by the deed of trust to Mrs. Wade, and for sale of the land to satisfy same.

Said tract of land of 756.63 acres was sold under order of the court and bid in by the said insurance company for $30,000, the amount of its debt and cost.

The cattle in the hands of the receiver were sold under orders of the court. After payment of all expenses and commission, there was left in the hands of the receiver $1,941.42, which is the total amount involved in this suit.

The chancellor found and decreed that so much of complainant's bill as alleged that the deed of trust executed by the defendant T. B. Wade, Jr., for the benefit of Mrs. Annie White Wade, was fraudulent or voluntary, was fully met and denied by the answer and not sustained by the proof, and he thereupon adjudged and decreed that to that extent the bill be dismissed. He found and decreed that no fraud was perpetrated upon the complainant or other creditors by Mrs. Wade either by the execution or the acceptance of said mortgage; that Mrs. Wade had no knowledge or notice that the said T. B. Wade, Jr., had attempted to pledge said live stock in the various notes executed by him to said bank, and that the lien of her deed of trust was superior to the equitable lien attempted to be created by said notes; that the purpose of said T. B. Wade, Jr., in executing said instrument was to perpetrate a fraud on the bank and to hinder and delay his creditors. He rendered decree for the receiver against T. B. Wade, Jr., for the amount of said notes in favor of the bank, and

decreed for other claims filed, and ordered a reference to the master to ascertain and report the amount of damage sustained by Mrs. Annie White Wade on account of the suing out of the injunction in this cause, the issuance and levy of attachment and sale of the live stock by the receiver.

Complainant excepted to that part of the decree sustaining the trust deed to Annie White Wade, and appealed to this court and has assigned errors as follows:

(1) The court erred in failing to hold that all of the personal property belonging to Mrs. Annie White Wade passed, under the common law, to her husband, T. B. Wade, Jr., and that therefore said trust deed which conveyed away all of his property when he was insolvent was voluntary and made without consideration.

(2) The court erred in decreeing that T. B. Wade, Jr., was indebted to Mrs. Annie White Wade in the sum of $63,977.07.

(3) The court erred in adjudging and decreeing that the fraud perpetrated by T. B. Wade, Jr., was not participated in by Mrs. Annie White Wade, and in not holding that she had knowledge or notice of the pledge of the live stock.

(4) The court erred in failing to adjudge and decree that the bank had an equitable lien on said live stock by reason of the pledge of same to secure said notes, which lien was superior to the rights of Mrs. Annie White Wade.

Mrs. Annie White Wade and T. B. Wade, Jr., were married in 1899. Mrs. Wade's father, George S. White, died in 1907. Mrs. Wade inherited from his estate $30,000 or $32,000 in cash and notes. Several years later her mother died, and she inherited an estate of considerable value; the total value of her inheritance from her father and mother being $108,000 or $109,000.

In 1908 Mrs. Wade purchased with her inherited funds a farm known as the "Stacy Place," in Giles county, taking title in her own name. She had this place cultivated on shares, receiving her share of the crop, disposing of it and depositing the proceeds to her own credit in the bank. Some of the crops she sold to her husband, T. B. Wade, Jr.

Mrs. Annie White Wade kept a bank account in her own name in which she deposited all her funds. She executed notes to the bank in her own name and paid them out of her own account.

T. B. Wade, Jr., in 1907 purchased a farm of 756.63 acres in Giles county, known as "Clifton Place," which became the family home.

Mrs. Wade through the years checked on her own bank account in payment of notes owed by T. B. Wade, Jr., lien notes on Clifton place owed by him, debts of his for operating expenses of the home and farm, general expenses of the family, etc., and made checks direct to

him, to the amount of as much as $50,000, as shown by exhibits in the record. These checks are signed "Annie White Wade," and show on their faces what they are for, but do not show that they are loans to T. B. Wade, Jr., with the exceptions of five small checks, amounting to $97, issued between December 2, 1931, and January 14, 1932, which checks show that they were issued for money loaned by Mrs. Wade to T. B. Wade, Jr., and a certain check issued by her to pay certain notes executed by Wade to the bank for which Wade gave her his note for $3,202.19 on November 29, 1911.

On January 15, 1929, Wade and wife mortgaged Clifton place to the Northwestern Mutual Life Insurance Company for $26,000.

T. B. Wade, Jr., operated the farm at Clifton place and raised cattle. He executed a number of notes to the Citizens' Bank of Pulaski and was indorser on other notes. Four of Wade's notes undertake to pledge cattle to the bank as collateral to the notes, but the bank did not take possession of the cattle, and they remained at Clifton place.

The Citizens' Bank closed its doors and ceased to be a going concern on June 26, 1931, and a receiver was appointed. Wade was given notice to pay his indebtedness.

On February 5, 1932, T. B. Wade, Jr., executed to Mrs. Annie White Wade a note for $63,977.07 and a deed of trust conveying all of his real and personal property of every kind to secure the said note.

The bank filed its bill seeking to have decree against Wade and others for said hereinabove mentioned indebtedness and to have the deed of trust set aside for fraud, and to assert a lien upon the live stock.

Mrs. Wade on October 22, 1931, wrote a check payable to T. B. Wade, Jr., for $400 for nine registered shorthorn heifers; on August 15, 1931, a check for $450 for fifteen shorthorn calves; on October 27, 1931, a check for $183.10 for five sows, one boar, and thirty-one shoats; and on October 26, 1931, a check for $101 for two mules. On January 1, 1929, she executed a note for $4,500 to T. B. Wade, Jr., for sixty shorthorn cows and one shorthorn bull, and made payments on same with checks. But in this suit she abandoned the sales and claimed the stock and cattle under the deed of trust.

1. Complainant contends that all of the money inherited by Mrs. Annie White Wade came into her possession prior to the Married Woman's Emancipation Act, and that under the common law the possession of the wife in personal property was the possession of the husband, therefore this money was the property of the husband, T. B. Wade, Jr., and could not be the subject of loans by Mrs. Annie White Wade to T. B. Wade, Jr., and cites Wade v. Cantrell, 1 Head, 346;

Allen v. Walt, 9 Heisk., 242; Joiner v. Franklin, 12 Lea, 422; Handwerker v. Diermeyer, 96 Tenn., 619, 627, 36 S. W., 869. Therefore the receiver insists that the conveyance was without consideration, voluntary, and fraudulent.

But the undisputed facts of this case are that Mrs. Annie White Wade inherited from the estates of her father and mother approximately $109,000 in cash and notes, which she received and retained in her own possession, that she deposited money in the bank in her own name and executed notes at the bank in her own name, and that she purchased a farm and took title in her own name, which she operated on shares, receiving her part of the crops and selling them.

It is clear that the property she inherited came to her as her general estate, which became the property of her husband when it came into her possession. It is the general rule at common law that marriage amounts to an absolute gift to the husband of all personal goods of which the wife is actually or beneficially possessed at the time of marriage, or which come to her during coverture. Snyder v. Jett, 138 Tenn., 211, 197 S. W., 488.

" 'Personal property in possession—and the possession of the wife in such case is the possession of the husband—is, in law, the property of the husband; nothing else appearing to show a separate property of the wife.' Wade v. Cantrell, 1 Head, 346; Hollingsworth v. Miller, 5 Sneed, 472; Cox v. Scott, 9 Baxt., 305. 'The general principle of the common law is that marriage amounts to an absolute gift to the husband of all personal goods of which the wife is actually or beneficially possessed at the time, or which come to her during coverture.' Wade v. Cantrell, 1 Head, 346; Allen v. Walt, 9 Heisk., 242; Joiner v. Franklin, 12 Lea, 422; Handwerker v. Diermeyer, 96 Tenn., 619, 627, 36 S. W., 869." Prewitt v. Bunch, 101 Tenn., 723, 50 S. W., 748, 751; Baker v. Dew, 133 Tenn., 130, 179 S. W., 645.

Nothing else appearing, it is clear that this property inherited by her became the property of her husband. But a separate estate may be created by an implied, as well as an express, agreement, and a married woman may acquire a separate estate by implication, which her husband cannot gainsay, in a fund which he has permitted her to accumulate, and to use in buying and selling, without requiring her to account for it. Snodgrass v. Hyder, 95 Tenn., 568, 32 S. W., 764; Carpenter v. Franklin, 89 Tenn., 142, 14 S. W., 484.

In this case Mrs. Wade was permitted to use, control, sell the property and expend the money as her own and as she saw proper without any interference upon the part of her husband from the time it came to her possession, and we think that her management of the estate makes this case come directly under the two cases last above cited. Especially is this true with respect to the small checks amounting to $97, the note for $3,202.19 executed by him to her on Novem-

ber 29, 1911, and the Stacy place purchased by her together with all the crops raised thereon, all of which became her separate estate.

A direct gift of money or other personalty, made by the husband to the wife, during coverture, creates and vests in the wife a separate estate in such money or property, and does so without apt words to that effect, and by necessary implication, and as a matter of law. Carpenter v. Franklin, supra; Snodgrass v. Hyder, supra; Barnum v. Le Master, 110 Tenn., 638, 75 S. W., 1045, 69 L. R. A., 353; Williford v. Phelan, 120 Tenn., 589, 113 S. W., 365.

The husband's execution of his note to his wife, for a valuable consideration, as for her money or property, shows his intention to create in her a separate estate to that extent, and to denude himself of any right to the same. The execution of such note, although a mere gift to the wife, will create a separate estate in her, and is enforceable in chancery, especially where the rights of the creditors of the husband are not prejudiced thereby. Powell v. Powell, 9 Humph., 488, 489; McCampbell v. McCampbell, 2 Lea, 661, 31 Am. Rep., 623; Templeton v. Brown, 86 Tenn., 50, 5 S. W., 441; Cowan v. Mann, 3 Lea, 229.

A husband's conveyance of land to his wife creates in her a separate estate, and the husband's payment of consideration and procurement of conveyance of land to be made to his wife vests in her a separate estate in the land. Ferguson v. Booth, 128 Tenn., 259, 160 S. W., 67, Ann. Cas. 1915C, 1079; Barnum v. Le Master, supra.

Hence we are of the opinion that, where the husband executes a note to his wife for money expended by her in paying his individual notes, and where he permits her to use funds inherited from her parents in purchasing a farm the title to which is taken in her own name, she acquires a title to the property as a separate estate. It follows that the crops, rents and profits, and accretions of the wife's separate estate in land are also her separate property, and cannot be seized for her husband's debts, unless it be clearly shown by the creditors that the wife has relinquished the same to him. Young v. Jones, 9 Humph., 551; Bottoms v. Corley, 5 Heisk., 4; Nelson v. Hollins, 9 Baxt., 553.

The rule of reduction to possession is not applicable to crops grown on the wife's separate estate, as the husband holds them as her trustee, and it requires clear evidence to show that she surrendered title to him. Bottoms v. Corley, supra; Lishey v. Lishey, 2 Tenn. Ch., 5, 6.

The Married Woman's Emancipation Acts, passed in 1913 and 1919, Code, section 8460, removed the disability of coverture and all property that she owned in her name at that time became her absolute property. And the husband cannot acquire by appropriation or reduction to possession during coverture any rights in her property

since the passage of that act. Priest v. Williamson County Banking & Trust Co., 148 Tenn., 87, 251 S. W., 904. This act destroyed the right of the husband to reduce to possession his wife's personalty, and the husband is now treated as the wife's agent where he comes into possession of her property and manages and invests it, and, if he purchases land and takes title to himself, a trust will result to the wife. Walker v. Walker, 2 Tenn. App., 279. Under this act the only way that the husband can acquire the wife's property during coverture is by purchase or gift, and he does not acquire it by appropriation or reduction to possession, which would have been sufficient to make the property his at common law. Tellico Bank & Trust Co. v. Loomis, 147 Tenn., 158, 246 S. W., 21. Since the passage of that act, the wife may rent out her land and collect rents, and the husband is deprived of any right to control the land or to collect the rents except with the consent of the wife. Pattison v. Baker, 148 Tenn., 399, 255 S. W., 710, 29 A. L. R., 1334.

The record fails to show that the creditors were in any way prejudiced by the execution of the $3,202.19 note and by the purchase of the Stacy place in her name. In fact, the record shows that T. B. Wade, Jr., was not insolvent when those transactions were had, and there is no proof that he owed any debts at that time.

The note for $3,202.19 and the account for the corn sold to him by her were valid claims against him which he had a right to secure.

■■ The bank pleaded the statute of limitations, and insisted that all of Mr. Wade's indebtedness was barred by the statute of limitations. The defendant T. B. Wade, Jr., did not plead the statute of limitations, but insisted that they were valid claims and kept alive by repeated promises to pay. Ordinarily, the defense of the statute of limitations is personal, and no one can plead the statute for another, and in personal actions the statute must be pleaded. Coleson v. Blanton, 3 Hayw. 152; 13 Ency. of Pleading & Practice, 194; 37 C. J., 709. But there are exceptions to this rule. Where sureties, judgment creditors, and subsequent attaching creditors' rights are involved, and the debtor is insolvent, then such creditors have a right to plead the bar of the statute to rival claims for the fund. 13 Ency. of Pleading & Practice, 195; 37 C. J., 709. But we need not go further into the question, for the reason that her claim for her rent corn sold to him is not barred by the statute, and witnesses proved that he stated that he had bought it and would pay her for it, and he promised to pay (in the mortgage) the $3,202.17 note which kept it alive.

■■ It is insisted that she failed to show by competent proof that he owed her $63,977.07, and therefore the conveyance was fictitious and fraudulent. If a part of her note was fictitious and fraudulent, the fact that he actually owed her a less amount would

not warrant a recovery, as fraud in fact as to part of the claim would vitiate the whole. See Gregory v. Guinn, 4 Tenn. App., 10. But, where it is not shown that a part of the claim is fraudulent in fact, then proof of a valid claim for a lesser amount will sustain a recovery. Neuffer v. Pardue, 3 Sneed, 191; Howard v. Woodfolk, 2 Shan. Cas., 218; Alley v. Connell, 3 Head, 578; Hickman v. Perrin, 6 Cold., 135. We are of the opinion that she failed to show by competent proof that Wade owed her the total amount of $63,977.07, but we do think that the proof shows that he owed her for the corn and the $3,202.19 note and the checks amounting to $97, which is more than the amount now in the hands of the receiver, and this phase of the question will be treated under the second assignment of error. It results that the first assignment of error must be overruled.

2. It appears from the record that most of the estate of Mrs. Annie White Wade has been expended by T. B. Wade, Jr., but, in order for this deed of trust to be sustained, it must also appear that, at the time the moneys were received by the husband, it was understood that he received them as a loan, and that both husband and wife intended to stand to each other in the relation of debtor and creditor. Farmers Bank of Lynchburg v. Farrar, 4 Tenn. App., 192; 12 R. C. L., 590. Both Mr. and Mrs. Wade testify that all sums lent to Mr. Wade by Mrs. Wade were intended as loans and were to be repaid. This testimony was objected to by complainant, for the reason that it was incompetent under Code, section 9777, which section provides that ''neither husband nor wife shall testify as to any matter that occurred between them by virtue of or in consequence of the marital relation.'' Objections were sustained as to all transactions between them out of the presence of other parties and not corroborated by other creditable proof. The existence of a debt from the husband to the wife cannot be established by their uncorroborated testimony. Sanford et al. v. Allen (Tenn. Ch. App.), 42 S. W., 183, 185; Farmers Bank of Lynchburg v. Farrar, supra; Hartnett v. Doyle, 16 Tenn. App., 302, 64 S. W. (2d), 227.

The burden of proof under the pleadings in this case is upon Mrs. Wade to show that the amounts paid to Wade and for him to the bank were loans. Yost v. Hudiburg, 2 Lea, 627; Farmers Bank of Lynchburg v. Farrar, supra.

George S. White, brother of Mrs. Wade, testified that he had heard his sister speak to her husband several times about his indebtedness to her; that once or twice she had sent for him and asked his advice about what she should do to recover the amount of his indebtedness, and that Mr. Wade did not deny the indebtedness; that Mr. Wade was present when Mrs. Wade discussed the question of his giving her a mortgage.

Mrs. Wade introduced a number of checks and notes which had been paid by her for Mr. Wade, which were covered by this deed of trust, and contends that these checks and notes corroborate the testimony of herself and Mr. Wade.

Only the small amount of checks, $97, above mentioned, show that Mrs. Wade intended to lend the money to Mr. Wade. The other checks are not shown to be loans.

She is not entitled to subrogation to the liens paid off in paying notes because there is no proof of agreement to that effect. 60 C. J., 807.

She filed a note for $3,202.19 executed by her husband to her on November 29, 1911, for money paid by her to the bank for him, and she files the canceled check. This was intended by them to be a loan, as hereinabove discussed by us.

As to the item of $2,400 for 600 barrels of corn sold to Mr. Wade by Mrs. Wade, Solon Rich and Gene Martin testified that they always kept the weights of the corn delivered to Mr. Wade, that Mr. Wade instructed them to keep the weights because he said he had to pay Mrs. Wade for the corn, and that Mrs. Wade was present. She grew from 1,500 to 1,800 barrels of corn each year. It is undisputed that this corn was raised on Mrs. Wade's farm and was used by Mr. Wade; that the farm was Mrs. Wade's separate estate, operated on shares with Solon Rich; that this corn was bought by Wade in the years 1926-1929.

There is no proof to establish the indebtedness of the amount of the note of $63,977.07 except as to the checks for $97, the $3,202.19 note, and $2,400 for corn, and complainant's second assignment should be sustained to that extent, in so far as the bank and his other creditors in this suit are concerned; but, as her debt will still amount to much more than the proceeds of his personalty in the hands of receiver, the modification of the decree will not affect the result.

3. We think the chancellor was correct in holding that Mrs. Wade did not participate in the fraud of T. B. Wade, Jr. Her brother, George S. White, testified that he had often heard her speak of the indebtedness of Mr. Wade to her and insist to Mr. Wade that she should be secured by a mortgage on his property. This shows that it was not intended as a gift. And the chancellor was correct in holding that Mrs. Wade had no knowledge or notice of the pledge of the live stock to the bank. The finding of the chancellor was as follows:

"There is some foundation in the fact as to the insistence of the bank that the notes of the defendant Wade were furnished to the liquidating agent, Mr. Hutton, at his request, and Mrs. Wade and Mr. Wade were in the bank, but no one of these witnesses testify to the fact that Mrs. Wade read the notes and was made cognizant of

the pledge of said cattle, but the only inference deducible from said fact is that she possibly had the opportunity to see said notes and there become familiar with their contents.''

This finding is, we think, borne out by the evidence. The bank attempted to show that Mrs. Wade knew that T. B. Wade, Jr., had attempted to pledge certain live stock to the bank to secure his notes, but, as stated by the chancellor, this evidence merely shows that she had an opportunity to examine the notes and find in them the sentence attempting to pledge the cattle, but does not show that she did discover the fact. She denies that she had any knowledge of the fact. She denies that she was at the bank at the time fixed by the officers of the bank as the time when the notes were given to her to examine; hence this assignment of error must be overruled.

The wife is not necessarily guilty of fraud where her husband fraudulently conveys his property to her. First Nat. Bank v. Wilkins, 11 Tenn. App., 16.

4. The fourth assignment, that the court erred in refusing to hold that the bank had an equitable lien on the live stock under the pledge contract which was prior to the lien of Mrs. Wade's mortgage, is not well made and must be overruled.

The notes of T. B. Wade, Jr., executed to the bank contained the following sentence; each note pledging different cattle:

''And do hereby pledge with the holder hereof as collateral security 25 head shorthorn baby beef on my farm in 22nd. dist. Giles Co., Tenn.''

These notes created no lien upon the live stock as against Mrs. Wade's mortgage, for the reasons that the possession of the stock was not delivered to the pledgee bank and Mrs. Wade took her mortgage without notice of the pledge. Ordinarily, delivery of possession is essential to the validity of a pledge. 49 C. J., 910-918; Eason v. Gibbs, 1 Tenn. App., 523; Johnson v. Smith, 11 Humph., 396; Wharton v. Lavender, 14 Lea. 178, 188; National Bank v. Winston, 5 Baxt., 685; Hurst v. Jones, 10 Lea, 8, 14; Nashville Trust Co. v. First National Bank, 123 Tenn., 617, 627, 134 S. W., 311. And even a pledge is not valid where the pledgor is left in possession of the property as agent of the pledgee. 49 C. J., 915, 917, sec. 43.

Where delivery of possession of property is not made to the pledgee, it will constitute merely an executory contract for the creation of a pledge.. 49 C. J., 897, 898; Woodward v. Crump, 95 Tenn., 369, 32 S. W., 195.

Where there is a clear intent to make particular property a security for debt, equity will treat the agreement to give a mortgage or a lien, as effective to create an equitable lien, where money has been parted with on faith that there will be a compliance, as

equity regards that as done which ought to be done. Milam v. Milam, 138 Tenn., 692, 200 S. W., 826.

But, where the contract of pledge does not constitute a valid pledge because of want of delivery of the property, which was sufficiently designated, such contract creates an equitable lien, which the courts will enforce between the parties, general creditors, and purchasers with notice, but not as against creditors with superior liens, or as against subsequent bona fide purchasers or pledgees or mortgagees for value without notice. See 49 C. J., 907, sec. 29; 22 Amer. & Eng. Ency. of Law (2 Ed.), 855; Woodward v. Crump, 95 Tenn., 369, 32 S. W., 195. Even had Wade obtained possession of the live stock from the bank by fraud and then pledged them or mortgaged them to his wife, who acted in good faith without notice, she would have a superior lien to that of the bank. Arendale v. Morgan, 5 Sneed, 703. But in this case the bank never had possession of them, and the mortgage was executed to Mrs. Wade for a valuable consideration without notice; hence this assignment must be overruled.

We think there is nothing in the contention that the pledge of the live stock was not valid on account of the insufficient description. Where the property pledged has been delivered and sufficiently designated or identified, no other description is necessary. See 49 C. J., 907. It has been held that a mortgage is valid where it merely states the number of horses and cattle without further description, and that parol evidence was admissible for identification. Atwood v. Brown et al., 1 Shan. Cas., 639; Barker v. Wheelip, 5 Humph., 329, 42 Am. Dec., 432.

All of the assignments of errors having been overruled, it results that the decree of the chancellor must be affirmed.* A decree will be entered in this court in favor of Mrs. Wade, awarding to her the proceeds of the sale of the live stock now in the hands of the receiver, and the cause will be remanded to the chancery court of Giles county, with direction that the receiver pay over said fund to Mrs. Wade under the proper orders of the chancellor and for a reference to the master to ascertain her damages caused by the wrongful suing out of the attachment and injunction. The costs of the appeal is adjudged against complainant receiver and the surety on his appeal bond, but the cost that accrued in the lower court will be adjudged as it was adjudged in the lower court.

Faw, P. J., and DeWitt, J., concur.

*NOTE:—A petition to rehear was filed in this cause, and on June 16, 1934, the decree of the chancellor was modified so as to give Mrs. Wade a decree for $5699.19.