MONTGOMERY *v.* LIPSCOMB.

*(Jackson.* June 25, 1900.)

1. BOUNDARY. *Burden of proof.*

The burden is on the defendant in ejectment to locate the lines of his superior conflicting title. (*Post, pp. 145, 146.*)

2. SAME. *Evidence of.*

It is competent to establish the location of beginning corners and boundary lines by proof of general reputation, or by proof of declarations of former owners, made while in possession, and of surveyors. (*Post, pp. 147, 148.*)

Cases cited: Beard *v.* Talbot, Cooke, 142; Sims *v.* Dickson, Cooke, 137; Holland *v.* Overton, 4 Yer., 485; Davis *v.* Jones, 3 Head, 603; Lannum *v.* Brooks, 4 Hay., 122.

3. SAME. *Call to run with another line.*

A call "to run 96 chains with A. B. H.'s line" does not necessarily stop at the end of A. B. H.'s line short of 96 poles. (*Post, pp. 150, 151.*)

---

FROM SHELBY.

---

Appeal from Chancery Court of Shelby County. F. H. HEISKELL, Ch.

CARROLL & MCKELLAR for Montgomery.

J. H. MALONE for Lipscomb.

Montgomery *v.* Lipscomb.

WILKES, J. The original bill in this case is to recover two tracts of land on Cow Island, in the Mississippi River, one containing 53 acres and the other 216 acres.

There was an answer and cross bill, and the pleadings took such shape that there was a disclaimer to the 53 acres, and as to all of the 216-acre tract except 115 acres, and as to this there was a prayer that defendant's title should be decreed good and all clouds should be removed therefrom. There was a trial in the Court below, and the complainant's bill was dismissed as to the 115 acres, and defendant's title as to that was pronounced perfect, and all clouds removed. Complainant has appealed and assigned errors. It is conceded that defendant has the older and better title, and that it is not defective if it covers the land in controversy, but it is insisted that it does not so cover the land in dispute. The question then resolves itself into one of boundary, and this turns upon the location of the beginning corner. It is conceded that if the beginning corner is at the point contended for by defendant, then there is an interlap of two grants over the disputed territory, and defendant's, being the older, forms the basis for the better title. Defendant's grant was issued in 1878, upon a survey made in 1874, and complainant's grant issued in 1885. In this aspect of the case, the burden of proof rests upon the defendant to establish his corners,

21 P—10

especially the beginning, and to locate his lines, so far as they touch the disputed territory. Defendant holds and claims under what is called the Tweedle grant, which describes the land as follows:

"Beginning at a stake with two cottonwood pointers, where the west line of A. B. Haynes' survey strikes the bank of said (Mississippi) river, thence south with said Haynes' west line ninety-six chains to a stake, thence west sixty-two chains to a point on the bank of the Mississippi River, thence up said river, with its meanderings, to the beginning, containing 160 acres of land."

It appears that Mrs. Tweedle was living in some cabins on the land in 1850, and exercising such acts of ownership over it as to cut and sell wood from it to steamboats plying the river. She died in possession in 1882, and her two daughters succeeded to the possession in 1882, and continued in possession until 1885, when they conveyed the 160 acres, with all its accretions, to Lipscomb, the defendant, and he has been in possession ever since. It will be seen that the beginning point is located by two references, or means of identification, one being a corner fixed by two cottonwood pointers, and the other fixed as to the point where the west line of A. B. Haynes' survey strikes the bank of the Mississippi River. Mrs. Young, one of the daughters of Mrs. Tweedle and one of the former owners

of the land, says that the corners of the land were marked when the Tweedle survey was made, in 1874, and she was then living on the land; that the surveyor and his assistant drove down mulberry stakes at the corners, and that the beginning stake was near the two cottonwood pointers called for in the grant; that these were shown to her by her mother as the beginning corner, and the stake ·and pointers were in place when she and her sister sold and conveyed to Lipscomb in 1885, and so was the stake at the southwest corner.

Mike Taughey stated that he went to live on the place in 1876, and that the stakes and cottonwood pointers were then shown to him as the beginning corner, and were pointed out to defendant when the sale was made to him, as well as the southwest and southeast corners. Defendant stated that he lived on the land eleven years, knew exactly where the cottonwood pointers were, and that their location was shown to him by the surveyor and Humphries, and that the stump of one of the trees was still to be seen. He also testified to marked lines, and that one line ran south of and near to the Tweedle cabin. This latter fact was testified to by Mrs. Young, by Taughey, Lipscomb, and Richardson.

It is said that evidence showing where former owners now dead said the line ran is hearsay, but it is well established that evidence of a gen-

eral reputation is admissible to establish beginning corners and boundary lines. *Beard* v. *Talbot*, Cooke, 142; *Sims* v. *Dickson*, Cooke, 137; *Holland* v. *Overton*, 4 Yer., 485; *Davis* v. *Jones*, 3 Head, 603.

In *Davis* v. *Jones* it is held that declarations of a former owner in possession, whether dead or alive, are admissible to show corners of a grant. *Davis* v. *Jones*, 3 Head, 606. And so may the declarations of a surveyor as to where lines were located. *Lowne* v. *Brooks*, 4 Hay., 122.

The other locative call is where Haynes' survey strikes the bank of the river. This survey was made in 1870, or four years before the Tweedle survey, and refers to the original field notes of the Chickasaw cession survey, which embraces this land. This was a government survey, and its calls are well known. These field notes and plats of the original surveyor are made the primary and best evidence by the statutes of the United States. 2 Am. & Eng. Enc. Law, 502. It is also shown by the evidence that Kirk, the surveyor of this grant, had before him and conformed to the cession survey, thus fixing with much certainty this point. Watkins, a witness for complainant, says that he went to this point in 1894 with Major Humphries, and saw not only a stake, but trees marked as pointers, but in his opinion they were not the original pointers. Major Humphries, however, who made the survey

with him and kept the field notes, insisted that the trees were those referred to in the Tweedle grant. The evidence of this witness, together · with the plat made part of his deposition, shows that he examined the calls of the cession grant in connection with this grant, and he locates it as defendant claims. It does not appear that any actual survey was ever made known as the Haynes' survey, and it is plain that it was located by this government or Chickasaw survey. Marked lines are also shown to have been on the south boundary, and this being located fixes the location of the beginning corner in the same place as the other tests.

The location of the Tweedle cabins is also strongly persuasive, if not conclusive, of the location of the Tweedle land. According to the calls and plats of defendants, their cabins are only a short distance north · of the southern boundary line, but according to the contention of complainant, they would not be on the Tweedle land at all, but would be about a half mile outside of his grant.

It is not probable that she, living on this land for a lifetime, and having it surveyed with care, and the corners located, would so run and mark a line as to leave her home not embraced in the boundaries, but a half mile beyond them.

The contention of the complainants is that much of the northern part of the Tweedle land has

been washed into the river, and that Lipscomb, beginning on what is now the bank, necessarily goes too far south and interlaps on Montgomery's grant. Two witnesses, Miller and Montana, are examined to prove this, and they state in a general way that the towhead of this island has changed from time to time, but they do not agree as to what the changes are, and they know nothing as to the location of the Tweedle grant, and they say that there have been, also, accretions to the island. A witness, Mr. Geo. W. Speer, says he was never on the island, but he makes some plats and maps from papers · in the abstract office at Memphis, but he fails to show any deed to base his plat upon, and could only find another map, made for other parties in 1880 by Mr. McOmber, who had before him the same evidence as the witness had.

Mr. Watkins testifies that he never saw the premises until 1885, or eleven years after the Tweedle grant was surveyed, and never at any time surveyed it, but did survey an adjoining tract with Humphries in 1894, who is the same witness who speaks with so much certainty as to the overlap. He says, however, that, with the notes of the Chickasaw survey before him, any surveyor could locate the point. He thinks the trees and stakes were not there, but Humphries, who was with him, says they were.

It is agreed for complainant that the Tweedle

grant calls to run 96 chains with A. B. Haynes' line, and this means that the 96 chains must necessarily be all the way upon such line. While the language is susceptible of this meaning, it may be that the line ran with Haynes' line so far as it went, but was to continue 96 chains, whether the line was that long or not. We do not attach much importance to this language, and think it susceptible of either construction, and upon this the strength of complainant's claim mainly rests. There is some conflict of evidence between defendant and complainant and defendant and Watkins which we cannot reconcile.

We think the great weight of evidence is with defendant's contention, and he has satisfactorily located the beginning corner as he claims, and is entitled to the land as claimed, and the decree of the Chancellor is affirmed, with costs.