## FARMERS BANK OF LYNCHBURG v. R. L. FARRAR et al.

Middle Section.  November 2, 1926.

Petition for Certiorari denied by Supreme Court January 29, 1927.

1. **Husband and wife.  A husband may prefer his wife to other creditors but the court will carefully search the record for evidence of fraud.**
   A husband may convey his property to pay or secure a debt owing by him to his wife, in preference to his other creditors.  The only restriction on such preference is that it must be made in good faith, in payment of or as security for a bona fide debt.  Transactions between husband and wife whereby the property of the husband is placed beyond the reach of his creditors generally excite suspicion, and they should be carefully scrutinized because husband and wife have unusual facilities for the perpetration of fraud on creditors.

2. **Husband and wife.  The evidence must show that the money was received from the wife purely as a loan before it will support a conveyance to the wife as against pre-existing creditors of the husband.**
   Generally a conveyance for the benefit of the wife can not be supported as against pre-existing creditors of the husband by showing that he received money of the wife, unless it also appears that at the time the money was received by the husband it was understood that he received it as a loan, and that both husband and wife intended to stand to each other in the relation of debtor and creditor.

3. **Husband and wife. Evidence. Conversations between husband and wife in relation to their own affairs not in the presence of some third party are not admissible.**

In view of Shannon's Code, Section 5596, all transactions and conversations had between the husband and wife in relation to their own affairs, not in the presence of some third party, fall within the prohibition of the statute, and testimony concerning such things must be excluded.

4. **Husband and wife. Evidence. Existence of a debt from the husband to the wife can not be established by their uncorroborated testimony.**

Where the existence of a debt from the husband to the wife is sought to be established, it is necessary to have some corroborating testimony, and their testimony alone is not sufficient to establish the debt.

5. **Husband and wife. Evidence. Evidence in instant case held insufficient to establish debt of husband to wife.**

In an action to set aside a deed of trust given by the husband to the wife where there was no proof of the existence of the debt except the testimony of the husband and wife, held there was not sufficient evidence to establish the debt.

6. **Husband and wife. Evidence. Under the general rule burden of proof to show absence of fraud is on the wife.**

It is very generally held that when a conveyance to a wife is assailed by creditors of a husband on the ground of fraud the burden of proof is on the wife to establish the existence, the amount and the validity of the consideration.

7. **Husband and wife. Evidence. The rule of burden of proof is otherwise in Tennessee.**

In Tennessee the rule is different and when creditors attack a conveyance to the wife as fraudulent and without consideration, and the wife denies fraud in her answer, the burden of proof is on the creditors to establish their allegations.

8. **Husband and wife. Evidence. Where the answer of the wife goes further than a general denial of fraud and makes certain allegations in regard to the transaction the burden of proof is then upon her to prove her allegations.**

Under the general rule in Tennessee, the burden is on the creditors to show that the wife is guilty of fraud in an action to set aside a conveyance to her but if the wife's answer is more than a general denial and she sets up therein certain allegations in regard to the transaction, the burden then shifts upon her to prove the truth of her allegations and the general rule of burden of proof does not apply.

9. **Husband and wife. Evidence. Answer in instant case held to bring case under the rule requiring the wife to prove her innocence of fraud.**

In an action to set aside a deed of trust given by the husband to the wife alleging that it was given to defraud creditors, where the wife in her answer not only denied the fraud but set up and alleged certain facts in regard to the transaction, held that the burden of proof was on her to show that the transaction was not fraudulent, and also held that the evidence produced was not sufficient and that the deed of trust should be set aside as fraudulent.

Appeal from Chancery Court, Lincoln County; Hon. T. B. Lytle, Chancellor.

Reversed and remanded.

Parks & Bean, of Lynchburg, for appellant.

Lamb & Lamb, of Fayetteville, for appellee.

FAW, P. J. The bill in this case was filed in the chancery court of Lincoln County, on January 22, 1923, by the Farmers Bank of Lynchburg, a Tennessee banking corporation, against R. L. Farrar, Cora Farrar, D. W. K. Shofner, C. W. Shofner, trustee, the Chicamauga Trust Company and the Prudential Insurance Company of America.

R. L. Farrar and Cora Farrar are husband and wife. C. W. Shofner and D. W. K. Shofner are brothers of Mrs. Cora Farrar. The Farrars and C. W. Shofner are citizens of Lincoln County, Tennessee, and D. W. K. Shofner is a resident of Humphreys County, Tennessee. The Chicamauga Trust Company is a Tennessee corporation with its place of business at Chattanooga, Tennessee, and the Prudential Insurance Company of America is a non-resident corporation with its office and place of business in the City of Newark, New Jersey.

It is alleged in the bill that complainant is the holder of three notes executed by the defendants D. W. K. Shofner and R. L. Farrar, aggregating $2770.12, which notes are past due and unpaid and, together with accrued interest and attorney's fees provided for therein, are justly due and owing to the complainant from defendants R. L. Farrar and D. W. K. Shofner.

It is further alleged that the defendants R. L. Farrar and D. W. K. Shofner are wholly insolvent and have no property subject to execution at law.

It is further alleged in the bill that defendant R. L. Farrar is the owner of two tracts of land situated in the 5th Civil District of Lincoln County, Tennessee, aggregating about sixty-nine acres. The aforesaid two tracts of land are described in the bill and it appears from the record that the two tracts adjoin each other and have been occupied as one farm.

It is further alleged that on June 5, 1914, the defendants Farrar and wife conveyed the aforesaid land to the defendant Chicamauga Trust Company, as trustee, to secure a note of even date with said conveyance for the sum of $3100, executed by said Farrar and wife to said Insurance Company, due June 5, 1919, with interest from its date at five and one-half per centum per annum, payable semi-annually, and that the payment of said note has been extended to June 5, 1924.

The foregoing averments of the bill are admitted by the defendants and the controversy in this suit arises out of averments of the bill which will now be stated.

Complainant alleges that, on June 22, 1922, defendant R. L. Farrar executed another deed of trust conveying the same tracts of land to the defendant C. W. Shofner, as trustee, to secure an alleged indebtedness of said R. L. Farrar to his wife, the defendant Cora Farrar, represented by a note for $4000 executed by defendant R. L. Farrar to his said wife and bearing even date with the deed of trust and due in three years, with interest from its date, and that the consideration for said indebtedness is recited in the instrument as follows:

"Whereas I, Robert L. Farrar, am justly indebted to my wife, Cora N. Farrar, in the sum of four thousand dollars, ($4000) for moneys loaned to me from time to time by her, together with the interest accrued thereon, and which money so loaned to me arose partly from my said wife's interest in her mother's estate, and partly from accumulations and investments which she had made from disposing of chickens, eggs, poultry, butter, pigs, etc., and which chickens, eggs, poultry, butter, pigs, etc., were her individual property."

A duly certified copy of said deed of trust to defendant C. W. Shofner, trustee, is filed as Exhibit No. I to complainant's bill.

Complainant further alleges in its bill that at the time said deed of trust was executed by defendant R. L. Farrar to defendant C. W. Shofner, as trustee, defendant R. L. Farrar was wholly insolvent; that at that time defendant R. L. Farrar was indebted to complainant to the amount set out in the bill and sued on in this case; that defendant R. L. Farrar was also indebted to other persons to a very large amount and said tracts of land constituted practically all the assets he had; that said lands, worth only six or seven thousand dollars, were then encumbered by the aforesaid mortgage to the Chicamauga Trust Company as trustee for the Prudential Insurance Company of America.

Complainant further alleges that at the time the said deed of trust was executed by defendant R. L. Farrar to defendant C. W. Shofner as trustee, the defendant R. L. Farrar was not indebted to his wife, the defendant Cora Farrar, in any amount, and certainly not to the amount expressed in the note described in said instrument; that defendant Cora Farrar received no such amount from her mother's estate and that the sums she did receive from her mother's estate were expended by her and not by her said husband, and were never loaned by her to her said husband; that

defendant Cora Farrar never possessed any money to the amount of said note to loan her said husband, or an amount near that sum, and that, in fact, she never made any loan whatever to her said husband as recited in said deed of trust; that whatever amount or sums of hers were used by her said husband were never used by him as loans, were never considered as loans by herself and husband, and were never regarded or treated as an indebtedness of said R. L. Farrar to his wife until defendant R. L. Farrar became indebted to the point of insolvency; that if any of the defendant Cora Farrar's means were ever used by her husband, they were reduced to his possession and made his own property and assets, and were never borrowed from his said wife; that if said moneys were loaned by the said defendant Cora Farrar to her said husband, said indebtedness was kept a profound secret for the fraudulent purpose of enabling her husband to secure credit; that neither the complainant nor any other creditor of R. L. Farrar ever heard of the existence of said indebtedness until after said mortgage was filed for record in the Register's Office of Lincoln County, Tennessee, and that complainant's debts were contracted by defendant Farrar on the faith of his ownership of said tracts of land; that the idea of treating any sums of the defendant Cora Farrar converted by her husband to his own use, behoof and benefit, as a debt owing by the husband to the wife, was wholly an afterthought on the part of said Farrar and wife, conceived after the defendant R. L. Farrar had become insolvent; that said deed of trust was executed for the purpose of hindering, delaying, defeating and defrauding the creditors of said defendant Cora Farrar, and especially complainant; that the defendant Cora Farrar well knew the purpose of her husband in executing said deed of trust, and willingly and knowingly participated in said fraud by insisting on the execution of said note and deed of trust and accepting the benefits of the same. The complainant charges in its bill that said deed of trust, so executed by Farrar to defendant Shofner as trustee, is entirely null and void; and complainant filed its bill to have the same so declared and set aside, and to have said lands sold and the proceeds applied to the payment of its said debts, and the bill contains an appropriate prayer to that end.

Complainant also prayed for a writ of attachment to be levied on the lands described in the bill, and that defendants Farrar and wife and C. W. Shofner be enjoined from transferring or in any manner encumbering said tracts of land until complainant's rights involved in this suit can be settled and adjudicated, and writs of attachment and injunction were issued and executed accordingly.

All of the defendants, except D. W. K. Shofner, answered the bill, and, after proof was taken, the cause was heard and a decree entered, by which decree the chancellor granted to complainant a recovery against defendant R. L. Farrar for the sum of $3260.20—the same being the aggregate amount of principal and interest due at the date of the decree (October 2, 1924) on the aforesaid three notes described in the bill—and for the further sum of $350 as reasonable attorney's fees provided for in the face of said notes, and for the costs incident to reducing said notes to judgment.

But the Chancellor found that so much of complainant's bill as alleges that the deed of trust executed by the defendant R. L. Farrar to the defendant C. W. Shofner for the benefit of the defendant Cora Farrar was fraudulent or voluntary is fully met and denied by the answer and not sustained by the proof, and the Chancellor thereupon adjudged and decreed that to that extent the bill be dismissed.

Complainant Bank prayed for and was granted an appeal from so much of the aforesaid decree as adjudges that the aforesaid deed of trust from R. L. Farrar to C. W. Shofner, trustee, to secure an alleged indebtedness of $4000, was bona fide and not fraudulent and void, and from the decree against it for costs, and, through assignments of error directed to that part of the decree thus appealed from, appellant insists (1) that the conveyance by defendant R. L. Farrar to C. W. Shofner, trustee, to secure an alleged indebtedness of $4000 to the wife of defendant R. L. Farrar was a voluntary one, made without any consideration to support it, when R. L. Farrar was hopelessly insolvent, and conveyed away all the property his creditors could look to for the payment and satisfaction of their debts; (2) that said conveyance was made for the fraudulent purpose of hindering, delaying, defeating and defrauding the creditors of R. L. Farrar, especially the complainant, in the collection of their debts; and (3) that the proof cast such great suspicion on the bona fides of the transaction as to place upon the defendants (Farrar and wife) the burden of proving its bona fides by clear and competent proof, and no such proof was adduced by them.

In reply to the appellant's assignments of error the appellees, Mr. and Mrs. Farrar, insist (1) that Mrs. Farrar had a sufficient separate estate to have supplied R. L. Farrar with the moneys secured by said deed of trust; (2) that there is sufficient and competent proof in the record to show that Mr. Farrar got, procured or converted to his own use, from such separate estate,

the moneys covered by the said deed of trust to C. W. Shofner, trustee, and (3) that the moneys so converted or loaned constitute a valid indebtedness owing by defendant Mr. Farrar to Mrs. Farrar.

A husband may convey his property to pay or secure a debt owing by him to his wife, in preference to his other creditors. The only restriction on such preference is that it must be made in good faith, in payment of or as security for a bona fide debt. Transactions between husband and wife whereby the property of the husband is placed beyond the reach of his creditors generally excite suspicion, and they should be carefully scrutinized, "because husband and wife have unusual facilities for the perpetration of fraud on creditors." 12 R. C. L., p. 515, par. 44, and pp. 589-590, par. 105; Robinson v. Frankel, 85 Tenn., 475, 478, 3 S. W., 652. The propriety of such suspicion and scrutiny of transactions between husband and wife is conceded by the learned and able solicitors for Farrar and wife in the last paragraph of their brief, wherein they say: "We cannot contest the authority of the cases cited by the learned solicitors for the appellant, holding that transactions between husband and wife are to be closely scrutinized by courts of equity and that a conveyance from husband to wife is sufficient alone to arouse the vigilance of a court of conscience; but while this is true, only a presumption arises when a transaction occurs between the spouses, which presumption can be easily removed by the proof of the validity and bona fides of the transaction, and we earnestly contend that this presumption has been more than overcome by the straightforward and candid testimony of Mr. and Mrs. Farrar, supported by such extrinsic evidence as could be obtained; and while it is true that very frequently the relationship of husband and wife is used to cover up fraud, still nevertheless we do know that the overwhelming majority of transactions between husband and wife are in absolute good faith, and we do not believe that this court will take the position that simply because this transaction occurred between husband and wife, the deed of trust should be set aside over the testimony shown in the record."

Generally a conveyance for the benefit of the wife cannot be supported, as against pre-existing creditors of the husband, (such as complainant Bank is shown to be in the instant case), by showing that he received moneys of the wife, unless it also appears that at the time the moneys were received by the husband it was understood that he received them as a loan, and that both husband and wife intended to stand to each other in the relation of debtor and creditor. 12 R. C. L., p. 590.

In the view we take of the present case, it is necessary, in order to determine whether the Chancellor erred in that part of his decree challenged by the assignments of error, to first ascertain where the burden of proof lies. This necessity arises from the fact that the existence of the indebtedness to Mrs. Farrar which the conveyance made by defendant R. L. Farrar to C. W. Shofner, trustee, purports to secure depends entriely upon the testimony of the defendants Farrar and wife.

Much of the testimony of Mr. and Mrs. Farrar was properly excluded by the Chancellor for the reason that it was incompetent under Shannon's Code, Sec. 5596, which Section makes husband and wife competent witnesses in all civil actions, but with the provision that "neither husband nor wife shall testify as to any matter that occurred between them by virtue of or in consequence of the marital relation." Shan. Code, Sec. 5596.

In view of this statute, our Supreme Court has held that "all transactions and conversations had between the husband and wife in relation to their own affairs, not in the presence of some third person, fall within the prohibition of the statute, and their testimony concerning such things must be excluded." Crane & Co. v. Hall, 141 Tenn., 556, 563, 213 S. W., 414.

Mr. and Mrs. Farrar were permitted to testify to other transactions between them in relation to their affairs, which transactions did not occur in the presence of a third person. This testimony was admitted in some instances over objection, and in others without objection; but "even in cases where the testimony of the husband and wife as to such matters has been admitted without objection, it has been held insufficient to set up a contract between them to the prejudice of the husband's creditors, unless corroborated." Crane & Co. v. Hall, supra, p. 563, citing other Tennessee cases.

There is a still more sweeping rule that renders it unnecessary for us to extend this opinion by pointing out in detail the specific items of testimony of Mr. and Mrs. Farrar admitted below which we think contravene the statutory rule that "neither husband nor wife shall testify as to any matter that occurred between them by virtue of or in consequence of the marital relation."

The "more sweeping rule" to which we refer is, that, in a case of the kind now before us, the existence of a debt from the husband to the wife cannot be established by their uncorroborated testimony. It was so held in the case of Sanford et al v. Allen & Wife (Tenn. Chy. App.), 42 S. W. 183, 185, in which the opinion of the Court of Chancery Appeals was prepared by Judge Neil, and was affirmed orally by the Supreme Court.

The bill in Sanford v. Allen, supra, was filed to set aside as vol-untary (and therefore fraudulent as to creditors) a conveyance of real estate to Mrs. Allen in payment of an alleged indebtedness of her husband to her. In the opinion, the Court of Chancery Appeals, after reviewing the evidence in the case, said:

"If there were nothing else in this case, we would be compelled to hold that the conveyance to the wife was valid. But, as before stated, there is no proof of the existence of the indebtedness except the testimony of the husband and wife. By analogy to those cases holding that a resulting trust cannot be supported by the uncorroborated testimony of the husband and wife, we likewise hold that the existence of a debt from the husband to the wife cannot be established by their uncorroborated evidence. Insurance Co. v. Shoemaker, 95 Tenn., 72, 81, 31 S. W., 270, and authorities cited. There is, therefore, no proof of any indebtedness between the husband and wife sufficient to justify the conveyance made to Mrs. Allen. It follows, then, that, when Mr. Allen caused the title to the two lots in Spring City to be made to his wife in consideration of the alleged indebtedness from himself to her, he made only a voluntary conveyance. It further results that, inasmuch as he did not retain sufficient property to pay his debts, we must hold that the conveyance was fraudulent in law, and should be set aside."

In the case at bar there is no corroboration of the testimony of Mr. and Mrs. Farrar with respect to the existence of a debt from Mr. Farrar to Mrs. Farrar. The only evidence in the record that Mr. Farrar procured and converted to his own use money or property belonging to Mrs. Farrar, or that he was indebted to her, comes from the testimony of Mr. and Mrs. Farrar. There is evidence in the record from some of complainant's witnesses that Mrs. Farrar received $1200 from her mother's estate; that she bought certain real estate, known in the record as the "Mulberry property," from her husband and paid him $500 for same; that she was an industrious, energetic and enterprising woman in the various lines of activity open to thrifty wives of farmers in the section of Middle Tennessee where she lived, and that for several years she kept a bank account in her own name. No other evidence corroborating Mr. and Mrs. Farrar has been pointed out by counsel for Mr. and Mrs. Farrar or found by us in the record.

It is very generally held that when a conveyance to a wife is assailed by creditors of the husband on the ground of fraud, the burden of proof is on the wife to establish the existence, the

amount, and the validity of the consideration. 27 Corpus Juris, pp. 792-793; Note, 90 Am. St. R., pp. 553-554. But the rule is otherwise in Tennessee. In the case note just cited (at p. 555) it is said that "Tennessee appears to be the only State to hold that when creditors attack a conveyance to the wife as fraudulent and without consideration, which the wife denies in her answer, the burden is on the creditors to establish the proof of their allegations." In support of his statement of the Tennessee rule the Annotator cites Cox v. Scott, 9 Baxt., 305; Washington v. Ryan, 5 Baxt., 622; Rhodes v. Wood, 93 Tenn., 702, 28 S. W. 294; Walters v. Brown, (Tenn. Chy. App.), 46 S. W., 777.

The general rule supported by the Tennessee cases just cited is correctly stated in the above quotation from page 555 of the aforesaid Note in 90 American State Reports, but the statement of the Annotator that Tennessee is the only State to so hold is not accurate. The courts of a small minority of the States adhere to the rule which prevails in Tennessee.

In 27 Corpus Juris, at pages 792-793, the cases from twenty-eight States and from Federal courts are cited in support of the "majority rule" which is there stated as follows:

"In accordance with the rules already discussed as to the fraudulent nature of conveyances and transfers between husband and wife, in most jurisdictions the general rule is that in a contest between the creditors of the husband and his wife, if the wife claims ownership of the property by a purchase during coverture, the burden of proof is on the wife to show that the purchase was for a valuable consideration paid by her out of her separate estate or by some person other than the husband, and especially is this so where the conveyance is made under suspicious circumstances, as where the debtor was insolvent at the time of the transfer, or where the transaction rendered him insolvent, or where the conveyance is made by way of preference to the wife on the eve of insolvency, or where the conveyance was by a deed which recited a nominal consideration, or where the recited consideration was so grossly inadequate as to amount to proof of fraud. The general rule stated above applies where a husband prefers his wife as a creditor; and also with equal force whether the property is real or personal."

It was held by the Supreme Court of Virginia that the majority rule rests on public policy. Morrisette v. Cook, etc., Co., 122 Va., 588. The reasons for the majority rule are more fully elaborated in Yates v. Law, 86 Va. 117, 120, as follows:

"Purchasers of either real or personal property made by the wife of an insolvent debtor during coverture are justly regarded with

suspicion, unless it clearly appears that the consideration was paid out of her separate estate. Such is the community of interest between husband and wife; such purchases are so often made a cover for a debtor's property; are so frequently resorted to for the purpose of withdrawing his property from the reach of his creditors and preserving it for his own use, and they hold forth such temptations for fraud, that they require close scrutiny. In a contest between the creditors of the husband and the wife there is, and there should be, a presumption against her which she must overcome by affirmative proof.''

In 27 Corpus Juris, at page 795, under the heading "minority rule," it is said:

"In some jurisdictions where transactions between husband and wife are not looked upon with the same degree of suspicion as in others, one who seeks to assail a conveyance by a husband to his wife during coverture, or a conveyance by a third person to the wife during coverture, has the burden of proving fraud in the transaction, the burden of proof not being shifted by reason of the relationship.''

In support of the "minority rule" just stated, cases are cited from California, Connecticut, Iowa, Louisiana, Mississippi, Ohio and Tennessee.

It would serve no useful purpose for us to discuss the relative merits of the majority and minority rules, as it is our duty to follow (when it is applicable) the rule established by our Supreme Court, under which rule the burden is primarily on creditors who attack as fraudulent a husband's conveyance to, or for the benefit of, his wife, to show fraud, where the wife, in her answer, makes a general denial of the charges of fraud.

But, in our opinion, the rule just stated does not control the instant case. Certain recitals in the deed of trust attacked in this case (which is exhibited with and made a part of the pleadings) and certain averments of the answers of the defendants Farrar and wife bring the case within the rule applied in the cases of Yost v. Hudiburg & Wife, 2 Lea, 627, and Crump v. Johnson & Wife (Tenn. Chy. App.), 40 S. W., 73, which latter case was affirmed by the Supreme Court.

In Yost v. Hudiburg, supra, the head-note correctly states the holding in that case as follows:

"Upon bill being filed to subject wife's property to husband's debts, charging the conveyance of same to wife by husband as fraudulent, the court says, had the answer to the bill stopped with a simple denial of the allegation that the means of the husband paid

for the property, the onus would have been upon the complainant to prove the allegation; but the answer having gone farther, the complainant is entitled to the benefit of all the admissions, and he is at liberty to draw any legitimate inference from such statements, though it be to establish fraud in the face of the general denials of the answer. And where the wife obtained the means with which to purchase the property in controversy from the sale of other property, though the manner of acquiring such property is not attacked by the bill, yet as the defendants set up these other conveyances, they must show that they are valid and bona fide.''

And in Crump v. Johnson, supra, it was held (as stated in the head-note) that ''on a bill to subject to a judgment against the husband real estate alleged to have been purchased with his funds and conveyed to the wife in fraud of creditors, where the wife in her answer not only denies the allegation that the means of the husband paid for the property, but further alleges that the property was paid for out of the proceeds of certain of her separate estate, the burden is on her to show that particular fact as alleged.''

In the trust deed in question defendant R. L. Farrar recites that he is indebted to his wife in the sum of $4000 for moneys loaned to him from time to time by his wife, together with interest accrued thereon, and which money so loaned arose partly from his wife's interest in her mother's estate, and partly from accumulations and investments which his wife had made from disposing of chickens, eggs, poultry, butter, pigs, etc., and that said chickens, eggs, poultry, butter, pigs, etc., were his wife's individual property.

The allegations of complainant's bill have already been stated herein. Defendant Mrs. Cora Farrar, in her answer, made the following denials and averments, viz.:

''This defendant vigorously denies the allegation contained in paragraph ten of the bill that her co-defendant, R. L. Farrar, was not indebted to her at the time of the execution of said deed of trust to the said C. W. Shofner, the true facts being that he was indebted to her, and indebted to her to at least the full extent of $4,000. It is true that this defendant did not receive so large an amount as $4,000 from her mother's estate, nor did she receive anything near such an amount from her mother's estate, but on the contrary, instead of expending said moneys, she loaned them to her co-defendant R. L. Farrar; and while it is true that never at any one time during her married life did she have so much on hand as $4,000, still the aggregate of the loans made by this defendant to her said husband during her married life, together with interest, was more than $4,000; and this defendant denies that moneys be-

longing to her, used by her husband were never used by him as loans, and were never considered by herself and her husband as loans, and were never regarded or treated as an indebtedness owing to her by her said husband until the said R. L. Farrar became heavily indebted, but on the contrary, some years after their marriage, and for at least twenty years, this defendant and her said husband have kept their business matters entirely separate and distinct, and her said husband has never converted to his own use any of her personal property, except with the distinct understanding at the time that the same was to be repaid, together with interest, and constituted an indebtedness owing by the defendant R. L. Farrar to this defendant.

"Defendant denies that the fact that her husband owed her, in so far as she was concerned, was kept a profound secret, although this defendant is frank to say that she was no more talking for publication or indiscriminately relative to her husband's indebtedness to her than she would of the indebtedness of any other person, but her family and family connection, and many of the neighbors knew of the business transactions between this defendant and her said husband, and knew that this defendant had loaned moneys to her said husband in various amounts.

"This defendant would here state once for all that the idea that her said husband was to pay her was not an afterthought on her part, but that as these loans were made to him from time to time, covering a period of a number of years, it was always with the distinct understanding that her co-defendant and husband, R. L. Farrar, owed her these moneys, and was bound both legally and morally to repay the same, just as though he had been an absolute stranger and outsider.

"This defendant would further state that every copper represented by this $4,000 note executed to her by her husband and secured by deed of trust is a valid, subsisting obligation, and represents moneys loaned to the defendant prior in point of time to any of the claims held by the complainant Bank, that it represented not only her inheritance, but her own separate and distinct earnings, and she is advised that said mortgage or deed of trust being executed to secure a valid and subsisting indebtedness is perfectly legal, and not only legal, but morally right, and she here and now specifically denies any participation in any fraud or collusion of any sort with the said R. L. Farrar.

"All allegations not hereinbefore specifically answered, admitted or denied are here and now denied, and as fully as though specifically denied."

It will be observed that, when reduced to its substance, Mrs. Farrar's answer is that during a period of twenty years (at least as far back as 1903) the husband has "converted to his own use" personal property of the wife, with the understanding at the time that the same was to be repaid, and the deed of trust states the kind and character of personal property which it is claimed the husband has "converted." There is no claim in the answer that the property thus converted by Mr. Farrar was the separate estate of Mrs. Farrar, unless it is to be inferred that it became her separate estate by reason of Mr. Farrar's consent, and his alleged agreement to repay her. Such an agreement between husband and wife cannot be presumed, as against the husband's creditors. Byler v. Adams (Tenn. Chy. App.), 62 S. W., 21, 26.

We are of the opinion that this case falls within the rule of Yost v. Hudiburg and Crump v. Johnson, supra, and that under the pleadings the burden was on Mrs. Farrar to prove the validity of the indebtedness which said trust deed to C. W. Shofner purported to secure.

But whether under the pleadings the burden of proof was primarily on the complainant or the defendants, we think the evidence discloses circumstances which cast such suspicion on the indebtedness claimed by Mrs. Farrar as to impose upon her the burden of showing its validity.

No accounts were kept of the transactions (running through many years) out of which it is now claimed that Mr. Farrar became indebted to Mrs. Farrar in sums which are admittedly merely estimates. The debt which, according to Mrs. Farrar's claim, has been accumulating for twenty years was known only to Mr. and Mrs. Farrar, and Mr. Farrar's creditors knew nothing of it until the trust deed purporting to secure the debt to Mrs. Farrar was registered. In 1918 Mr. Farrar was considerably indebted to the Elk National Bank of Fayetteville, and the President of the Bank, Mr. Dryden, called on him for a statement of his liabilities and resources, and he furnished to Mr. Dryden a statement in which there was no mention of a debt to his wife. The only explanation offered by Mr. Farrar for such omission is found in an excerpt from his testimony as follows:

"Q. Mr. Farrar, did you hear the testimony of Mr. H. E. Dryden, both the original testimony and when he was recalled? A. Yes sir.

"Q. I will ask you whether or not you did give the statement referred to by Mr. Dryden to the Federal Reserve Bank? A. Yes sir.

"Q. And filed as an Exhibit to his testimony upon being recalled? A. Yes sir.

"Q. Mr. Farrar, does that Exhibit, or not, make any statement as to this indebtedness that you owe your wife? A. No sir.

"Q. Now, Mr. Farrar, just go along in your own way and tell how it happened that you did not speak of this indebtedness, or whether it occurred to your mind? A. Well, he called me in there for a statement, or I was in there on business. Of course, I thought the accounts that I owed would possibly be pressing me; it never entered my mind that I would ever have to pay it. I thought he wanted everything that was outstanding; it was no intention of mine to beat anything at all; but just thought this one would not press me anyhow.

"Q. In fact, do you know whether you thought about it at all, Mr. Farrar, at that time? A. Well, I don't know.

"Q. You do owe it, don't you? A. I do, yes sir.

"Q. I believe you stated that you listed there such liabilities as you thought that you would be compelled to meet. A. As they fell due, and notes of that sort.

"Q. Had Mrs. Farrar, up to that time, ever demanded her money from you? A. Not a penny.

"Q. Was there any definite time as to when it should be repaid? A. No sir, there was nothing said about it.

"Q. Then, as I understand, it was just a floating liability that you recognized and intended to pay? A. Yes sir.

"Q. But a liability upon which you would never be pressed, is that correct? A. Yes sir."

Mr. Farrar had obtained credit upon the faith of his ownership of the land conveyed to secure the alleged debt to Mrs. Farrar and, by that conveyance, made at a time when he knew he was insolvent, he placed beyond the reach of his other creditors (if the conveyance was valid) the only property available for the satisfaction (in part at least) of their debts.

The circumstances stated tend to impeach the good faith of the claim of Mrs. Farrar. "This debt being a means by which it is sought to withdraw property from creditors, the rule often announced by this court applies that in transactions between husband and wife it requires less proof to impeach the act, and more and stricter proof to repel impeachment than between strangers, and, unless it be shown to be free from fraud, it will not be sustained." Bennett v. Bennett, 38 Am. St. R., 47, 56.

"The marriage relation, in times of pecuniary disaster, affords so strong an incentive to wrong creditors, and such an opportunity

for so doing, and it is so hard for creditors to seek out and prove fraud, that the law demands clear evidence to enable a wife to set up a debt against her husband as to creditors; and business safety requires us to adhere firmly to these principles." Idem, pp. 55-56.

The defendants Mr. and Mrs. Farrar have not discharged the burden which rested upon them, for "the existence of a debt from the husband to the wife cannot be established by their uncorroborated evidence." Sanford v. Allen, supra.

If there was sufficient corroboration of Mr. and Mrs. Farrar to show definitely that Mrs. Farrar had a sufficient separate estate to enable her to make a loan of $4000 to her husband, this would not be sufficient to support a decree for defendants. A like situation was presented to the Court of Chancery Appeals in the case of Byler v. Adams, 62 S. W., 21, 27, and the court disposed of the question there presented as follows:

"Returning now to the item of $600, we have held that there is sufficient corroboration of the husband and wife, as to $300 of that sum, that is sufficient to show the character of $300 as a separate estate. But there is no corroboration as to the use of this money by the husband; hence, under the rules of law applicable to the particular subject, there is no sufficient testimony that the husband owes the wife anything on account of having used, under an agreement with her, her separate estate, or any money belonging to her."

It results that the decree of the Chancellor dismissing complainant's bill insofar as it sought a decree declaring the aforesaid trust deed to secure the alleged debt in favor of Mrs. Cora Farrar against her husband R. L. Farrar to be voluntary and fraudulent is reversed, and a decree will be entered here setting aside the aforesaid trust deed, and ordering the property therein described sold for the satisfaction of the judgment rendered in this case below against R. L. Farrar, but such sale to be subject to the prior trust deed for the benefit of the Prudential Life Insurance Company of America. The cause will be remanded to the chancery court of Lincoln County, and, in default of payment of the aforesaid judgment and the costs of the cause, the land in question may be sold under the orders and decrees of the chancery court. The costs of the cause in the chancery court and the costs of the appeal will be adjudged against the defendants R. L. Farrar and Cora Farrar, but if not sooner paid by them, the costs will be paid out of the proceeds of the sale of the land.

Crownover and DeWitt, JJ., concur.