McDONALD v. BALDWIN et al.—148 S. W. (2d) 385.

Middle Section. November 16, 1940.

Petition for Certiorari denied by Supreme Court, March 8, 1941.

Robert F. Turner, of Jamestown, for appellants Baldwin.
John S. Hale, of Jamestown, for appellee McDonald.

CROWNOVER, J. This is a suit to set aside as fraudulent a conveyance executed by the husband, C. C. Baldwin, to his wife, Mary Baldwin, and to have said lands sold and the proceeds applied to the payment of the complainant's judgment of $170.78 and a store account of $80.13 against C. C. Baldwin.

The defendant C. C. Baldwin answered and denied that the conveyance was fraudulent, and alleged that his wife had paid a valuable and sufficient consideration for the land, and that at the time the conveyance was made he did not owe the complainant. He pleaded laches on the part of the complainant in attacking the conveyance, and pleaded the Statute of Limitations as to the store account.

The defendant Mary Baldwin demurred to the bill on the grounds (1) that complainant was not an existing creditor at the date of the conveyance, and (2) that the complainant was guilty of laches in attacking the conveyance. The demurrer was overruled by the court.

Thereupon the defendant Mary Baldwin answered and alleged that she knew nothing about the debt and judgment in question, and alleged that this property was purchased with the proceeds from the sale of a piece of property which her father had conveyed to her before her marriage, and she denied fraud. She pleaded laches in that the complainant had delayed his attack on this conveyance for more than six years after obtaining judgment, and claimed homestead in the lands.

The Chancellor found that the conveyance was fraudulent in fact and in law and should be set aside as to the judgment; that Mrs. Mary Baldwin did not participate in the fraud; and that C. C. Baldwin's interest in the land should be sold. He sustained the plea of the Statute of Limitations as to the store account. Decree was entered in favor of W. E. McDonald and against C. C. Baldwin for $256.19 and the lands were ordered sold subject to Mary Baldwin's interest and the homestead rights of defendants.

The defendants excepted to said decree and appealed to this court and have assigned errors, which are, in substance, as follows:

(1) The Chancellor erred in holding that the conveyance was fraudulent. The burden was on McDonald to show that it was fraudulent, which he failed to do.

(2) The Chancellor erred in overruling the defendants' demurrer. The complainant was not an existing creditor when the conveyance was made, hence said conveyance did not hinder or delay complainant in the collection of his debt.

(3) The Chancellor erred in not dismissing the complainant's suit because of laches in waiting so long to bring this suit and in failing to exercise any diligence to collect this debt.

(4) The Chancellor erred in admitting in evidence, over objection, copies of the warrant, judgment, and note.

(5) The Chancellor erred in admitting in evidence a statement made by Baldwin as to his reason for executing the conveyance.

(6) The Chancellor erred in refusing to admit testimony of C. C. Baldwin that the lands were bought with Mrs. Mary Baldwin's money.

The facts necessary to be stated are as follows:

On January 1, 1931, the defendant C. C. Baldwin borrowed $150 from T. J. Norris and executed a note payable to Norris, due twelve months after date, with interest at 6%, and W. E. McDonald (the complainant) and Wilburn Todd signed the note as sureties.

On May 20, 1931, Baldwin executed a deed conveyed all his property to his wife, Mary Baldwin. The deed recited that it conveyed all of his personal property, 45 acres of land, and everything he owned for the consideration of $650.

On January 5, 1932, Norris brought suit before a justice of the peace on the note and recovered a judgment against Baldwin, McDonald and Todd for $159 and the costs of the suit. McDonald and

Todd paid the amount of the judgment and took judgment over against Baldwin for $170.78, on January 30, 1932.

Todd assigned to McDonald his interest in the judgment, on October 4, 1933.

The judgment not having been paid, McDonald instituted this suit to collect the same, on April 16, 1938.

The lands involved were in three tracts. One tract of 18 acres was conveyed to C. C. Baldwin and wife, Mary Baldwin, in 1918; one tract of 10 acres was conveyed to C. C. Baldwin in 1919; and one tract of 20 acres was conveyed to C. C. Baldwin in 1920.

1. The deed attacked by the bill in this cause recites that the lands were conveyed by Baldwin to his wife, Mary Baldwin, for $650 cash.

The answers of Baldwin and Mrs. Baldwin allege that Mrs. Baldwin paid a valuable and sufficient consideration for the lands.

But Baldwin and Mrs. Baldwin both testified that the consideration was an antecedent debt; that when they were married Mrs. Baldwin owned a small farm which her father had conveyed to her; that she sold it (in 1912) and the proceeds of the sale were used in the purchase of this land (in 1918, 1919 and 1920) ; and that title was taken in C. C. Baldwin by mistake.

This is not a proceeding to reform the deed or to set up a resulting trust. According to the pleadings the Baldwins' claim is that Baldwin was indebted to Mrs. Baldwin.

In order for the deed from Baldwin to his wife to be sustained it must be shown that at the time he received the money it was understood that he received it as a loan, and that both husband and wife intended to stand to each other in the relation of debtor and creditor. Robertson v. Wade, 17 Tenn. App., 457, 466, 68 S. W. (2d), 487; 12 R. C. L., 590.

The existence of a debt from the husband to the wife cannot be established by their uncorroborated testimony. Sanford et al. v. Allen (Tenn. Ch. App.), 42 S. W., 183, 185; Farmers Bank of Lynchburg v. Farrar, 4 Tenn. App., 186, 192; Harnett v. Doyle, 16 Tenn. App., 302, 64 S. W. (2d), 227; Robertson v. Wade, supra.

The burden of proof under the pleadings in this case is upon Mrs. Baldwin to show that the amounts paid by her to Baldwin were loans. Yost v. Hudiburg, 70 Tenn. (2 Lea), 627; Farmers Bank of Lynchburg v. Farrar, 4 Tenn. App., 186; Robertson v. Wade, supra.

The testimony of Baldwin and Mrs. Baldwin is to the effect that the money was lent to him, but this testimony is uncorroborated and is of no weight.

M. H. Spurlin testified that Baldwin admitted that the conveyance was made to evade this debt. He testified that he was a notary public in 1931 and took Baldwin's acknowledgment to the deed conveying the lands to Mrs. Baldwin and that when Baldwin employed him to draft said deed he told him that McDonald and

Todd would levy upon his property if he did not convey it to Mrs. Baldwin. And he was corroborated by his wife.

The title to this property had been allowed to remain in the name of C. C. Baldwin for more than ten years, during which time this indebtedness was incurred. Hence we are of the opinion that this conveyance was fraudulent.

■ 2. The defendants Baldwin contend that McDonald was not an existing creditor when the conveyance was made therefore he could not maintain this suit, but there is nothing in this contention.

The terms "creditor" and "debtor" are defined in the Uniform Fraudulent. Conveyance Act as follows:

"'Creditor' is a person having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed, or contingent.

"'Debt' includes any legal liability, whether matured or unmatured, liquidated or unliquidated, absolute, fixed, or contingent." Code, sec. 7271.

■ By reason of this statute a surety may bring an action to set aside a fraudulent conveyance of his principal before any loss incurred or payments made. Greene v. Starnes, 48 Tenn. (1 Heisk.), 582; 24 Am. Jur. 291, sec. 152.

■ "Under the Uniform Fraudulent Conveyance Act, if the debtor intended to defraud 'either present or future creditors,' the transaction is 'fraudulent as to both present and future creditors.'" 24 Am. Jur. 285, sec. 143; Code, sec. 7277.

■ 3. The defendants contend that the complainant was guilty of laches in failing to bring suit before the expiration of about six years. We think there is nothing in this contention.

There is no evidence that Mrs. Mary Baldwin has made any valuable improvements on this property or made any expenditures in reliance on her title.

Apparently the property was occupied by both Mr. and Mrs. Baldwin after the execution of the deed in the same manner as before.

■ Ordinarily, laches will bar equitable remedies where the delay works prejudice to a party, such as changed conditions in the premises, expenditure of money, change of value, and intervening rights. 21 C. J., 231-236, secs. 225-229.

"The right to institute a suit for relief against a fraudulent conveyance may be lost in equity by the laches of the complainant. . . . The doctrine of laches has been frequently applied where the granting of the relief sought would work prejudice to the defendant, as where the complainant has slept on his rights and allowed defendant to make valuable improvements or make other expenditures in reliance on his title. Laches is not, like limitation, a mere matter of time, and the question as to what constitutes laches must be determined, not only from the lapse of time, but also from the facts and circumstances of the particular case, and according to right and justice. Laches in

bringing the action cannot be successfully interposed as a defense unless delay in this respect has injuriously affected the party against whom suit is brought or unless his position has been altered to be prejudiced thereby.'' 27 C. J., 764, 765, sec. 655.

''Where, after a fraudulent conveyance of a boarding house by a husband to wife, the business was run in the same manner as before, and the wife devoted no more time nor money in improving the property and business than she would have done had the title remained in her husband, the delay of a creditor of the husband in recovering judgment and instituting a creditors' suit to set the conveyance aside had not been prejudicial to the wife, and hence laches was no defense to the bill. Helm v. Brewster, 42 Colo. 25, 93 P. 1101.'' 27 C. J., 765, note 90(a).

4. The defendants assigned as error the admission, over objection, of copies of the original note, warrant, judgment and judgment over, on the ground that they were not the best evidence.

There is no controversy in this suit about the debt and the amounts of the judgment and judgment over. The defendant Baldwin practically admits the same, and several witnesses testified as to the amount of the note and judgments.

However, these copies were admissible in evidence, as it was shown by the testimony of Spurlin, who was a justice of the peace, before whom the suit was brought on the note, that the original warrant, the note and the notice had been lost; that careful search had been made and they could not be found; that he was acquainted with the facts of the case and that the copies filed by him he believed to be true and perfect copies. This was sufficient to supply the lost instruments. Code, sec. 9879.

Spurlin further testified that the copy of the warrant, notice and judgment filed by him was a copy of a certified copy of such proceedings made by him while a justice of the peace and made by referring to the original papers. This was sufficient proof of the lost papers. Morris v. Swaney, 54 Tenn. (7 Heisk.), 591, 598.

The fact that Spurlin could not remember every detail when testifying about the proceedings, went to the weight of his testimony only.

Charlie Norman, justice of the peace, who succeeded Spurlin, produced the docket at the hearing before the Clerk and Master, which showed a record of the judgment and judgment over, and filed certified copies of the same. This was sufficient to establish the judgment.

5. The testimony as to Baldwin's admission that he made this conveyance to evade the payment of this debt, was admissible because it was shown that he was in possession of this property at the time he made the statement just before he executed the deed. It was a part of the res gestae. Dunn v. Eaton, 92 Tenn., 743, 23 S. W., 163;

Montgomery v. Lipscomb, 105 Tenn., 144, 58 S. W., 306; 1 Ency. of Evidence 510-513; 8 Michie's Digest 280; Neal v. Peden, 38 Tenn. (1 Head), 546, 547; Trotter v. Watson, 25 Tenn. (6 Humph.), 509.

 Admissions may be proved by any person who heard them. Carnahan v. Wood, 32 Tenn. (2 Swan), 500, 503.

 6. The Chancellor was correct in excluding the testimony of C. C. Baldwin that he owed his wife $650. As hereinabove discussed, in section No. 1 hereof, his testimony was incompetent. Code, sec. 9777.

All of the assignments of errors being overruled, the decree of the Chancellor is affirmed. A decree for $256.19 ·with interest will be entered in this court in favor of McDonald and against Baldwin together with the costs of the cause. The costs of the appeal are decreed against the Baldwins. The cause will be remanded for a sale of the property as decreed by the Chancellor. The defendants will be allowed sixty days from the entry of the decree in which to pay this decree before the lands will be advertised for sale.

Faw, P. J., and Felts, J., concur.

On Petition for Additional Finding of Facts.

This case is again before us on a petition for an additional finding of facts, and after an investigation of the petition and the record we find the following additional facts:

(1) That the complainant McDonald had actual knowledge of the existence of the deed from Baldwin to his wife, dated May 20, 1931.

(2) That no execution was issued on the judgment in favor of McDonald against C. C. Baldwin until the bill was filed in this cause on April 16, 1938.

(3) That C. C. Baldwin built a house for Clayton Garrett in the community where he lived after the judgment was rendered.

(4) That C. C. Baldwin cut and sold crossties after the judgment was rendered, of which complainant McDonald had knowledge.

(5) That Baldwin received from 50c to 80c an hour for several months for work as a carpenter after said judgment was rendered, but failed to pay any of said judgment.

(6) That Baldwin testified that he owned several hundred dollars worth of timber, and owned crossties, since this judgment was rendered.

(7) That Baldwin testified that Mary Baldwin had sold five acres of this land to her son.

(8) That Spurlin, who was formerly a justice of the peace, testified that he made certified copies of the warrant, note, judgments, and notice by referring to the justice's docket and certified copies of the judgments.

But these facts do not change the result.

The petition in other respects is denied.

Faw, P. J., and Felts, J., concur.